Kayla SLATER, Appellant,

v.

NATIONAL MEDICAL ENTERPRISES, INC.; NME Specialty Hospitals, Inc.; PIA of Fort Worth d/b/a Psychiatric Institute of Fort Worth; Psychiatric Institutes of America, Inc.; Community Psychiatric Centers of Texas, Inc.d/b/a CPC Oak Bend Hospital; Fort Worth Medical Plaza, Inc. d/b/a HCA Medical Plaza Center; Annette Shelton, M.D.; and Robert Lamm Deas Appellees.

NO. 2–96–342–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 29, 1998.

Rehearing Overruled Feb. 26, 1998.

1. *See* TEX.CODE CRIM. P. ANN. art. 1.13(a), 1.14(a), 1.15 (Vernon Supp.1998).

Noteboom and Gray, Chris Cessac, Hurst, for Appellant.

Gibson, Dunn & Crutcher, L.L.P., Robert B. Krakow, Dallas, for Appellee National Medical Enterprises, Inc.

Haynes and Boone, L.L.P., G. Dennis Sheehan, Fort Worth, for Appellee Psychiatric Institutes of America and NME Speciality Hospitals, Inc.

Davis & Wilkerson, P.C., Robert L. Hargett, Austin, for Appellee Community Psychiatric Centers of Texas, Inc.

Gwinn & Roby, Lea F. Courington, Dallas, for Appellee Fort Worth Medical Plaza, Inc.

McLean & Sanders, P.C., Tom Renfro, for Appellee Annette Shelton, M.D.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

This is a medical malpractice case that requires us to determine whether Appellant Kayla Slater's claims are time-barred and whether duress of a third party or fraudulent concealment act to toll the statute of limitations for her claims. The trial court granted summary judgment for Appellees[1] on all of Appellant's claims on the basis of limitations. We affirm.

### I. Background

In January 1987, Appellant, sixteen years old, suffered from depression related to the then-recent divorce of her parents. She sought help from Dr. Annette Shelton, who admitted her to inpatient treatment at Plaza Medical Plaza in Fort Worth. Appellant alleged that while there, she was placed on an all-adult psychiatric floor and was overmedicated. She claimed that she did not receive the appropriate therapy that she had been told of and remained depressed after her release.

Shortly thereafter, Dr. Shelton admitted Appellant to the Psychiatric Institute of Fort Worth, based on a diagnosis of chemical de-

---

1. Appellees are several psychiatric hospitals and a physician.

pendency. Appellant alleged mistreatment and overmedication there, and that she was released once her insurance benefits lapsed. She alleged that she remained depressed after her release. Appellant alleged the same series of events occurred thereafter at Willow Creek Hospital and then CPC Oak Bend Hospital. She further alleged that while she was in CPC Oak Bend Hospital, her alcohol and drug abuse counselor, Robert Lamm Deas, subjected her to mental and emotional abuse and sexual advances. Appellant was then seventeen, and Deas was forty-two years old.

Appellant was released from CPC Oak Bend Hospital on January 15, 1988, and was not admitted to any other hospitals by Dr. Shelton. Deas left Oak Bend's employment about eight weeks later. Appellant's last treatment by Dr. Shelton was on August 26, 1989.

Appellant was later married to Deas from March 16, 1990 to April 13, 1992. Appellant filed an affidavit in the summary judgment proceeding detailing her allegedly abusive relationship with Deas. Appellant alleged that Deas threatened throughout their marriage to "make her life miserable" if she ever sued him. She claimed that Deas was also physically abusive on many occasions, including throwing her into the fireplace, bruising her arms, slapping her, and "busting her lips." Appellant also alleged that Deas was usually drunk, would not let her manage even her own income, and often locked her outside on the balcony. After Appellant ended the marriage, she alleged that Deas continued to stalk and harass her and her family, and continued to threaten her for several years.

Appellant filed suit on August 31, 1995. Her third amended original petition contained the following allegations:

Plaintiff alleges Corporate Defendants have been engaged in a pattern of fraud in the psychiatric or mental health care industry for several years. Plaintiff further alleges that, in pursuit of fraudulent and illegal profits from the psychiatric or mental health care industry, Corporate Defendants developed a broad network of fraudulent relationships with mental health care providers, including physicians, nurses, and other mental health care professionals who subordinated their independent medical judgment to the profit motive of Corporate Defendants. Plaintiff alleges that Dr. Shelton was among the mental health care professionals enticed by the Corporate Defendants into a network of conspiracies designed to defraud Plaintiff and others.

Plaintiff alleges that this network was especially concerned with admitting persons as patients to psychiatric facilities owned or operated by Corporate Defendants and extending the length of stay such persons had in these facilities. Plaintiff further alleges that Corporate Defendants and Dr. Shelton, in furtherance of this common plan, admitted Plaintiff Kayla Slater to the above-named psychiatric hospitals without proper medical justification.

. . . .

Plaintiff alleges that all Defendants have engaged in a pattern of fraud in the psychiatric and mental health industry for several years. This pattern of fraud has two main levels. The first level is designed to generate inpatient admissions of patients into the psychiatric hospitals. The second level of fraud involves employees of the Defendants going to great lengths to insure that an insurance company will pay for the inpatient hospitalization once it is secured.

All Defendants entered into a scheme, joint action, or conspiracy not directed at Plaintiff particularly, but at all persons who sought help from psychiatric facilities owned or operated by Corporate Defendants and at patients of Dr. Shelton. In doing these acts, Defendants were joint actors and conspirators, engaged in a scheme to exact payment from insurance companies without regard to the patient's rights to liberty and freedom from unwarranted medical treatment.

Appellant also alleged various acts of negligence attributable to each of the hospitals and to Dr. Shelton and Deas individually.

The trial court granted summary judgment for each hospital and Dr. Shelton against Appellant on all claims, holding that each

claim was time-barred by the applicable statutes of limitations. The summary judgment order does not specifically dispose of Robert Deas, but does order that "all other relief not herein granted is hereby denied."

■ We note that there is no evidence in the record that Deas was ever served with citation or appeared in the suit. Therefore, "the case stands as if there had been a discontinuance as to [Deas], and the judgment is to be regarded as final for the purposes of appeal." *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 232 (Tex.1962); see *Ballard v. Portnoy,* 886 S.W.2d 445, 446 (Tex.App.—Houston [1 st Dist.] 1994, no writ) (op. on reh'g).

## II. Points on Appeal

Appellant asserts eight points in this appeal. In her first point, Appellant contends that summary judgment was improper because her fraud claims were brought within four years of her discovery of Appellees' fraud. All Appellees respond that she stated only health care liability claims governed by the strict two-year statute of limitations of article 4590i,[2] and alternatively, that even the four-year statute of limitations has run, so that her claims are time-barred regardless of their labels.

Appellant's second, third, and forth points assert that summary judgment was erroneous on both her fraud and health care liability claims because the limitations periods were tolled due to the duress she suffered at Deas's hands. Appellees respond that because Deas did not work for them at the time of the alleged duress, any duress was imposed by a third party. They assert that duress has never been recognized as tolling limitations for the health care liability statute, and that even if it was, or if we hold her claims to be common law fraud claims, which are subject to the duress defense, duress of a third party cannot toll limitations.

Appellant's fifth, sixth, and seventh points are partially repetitious of point one, but they also contend that the limitations period provided by article 4590i is unconstitutional

as applied to her fraud and health care liability claims. Primarily, she argues that article 4590i violates the open courts provision of the Texas Constitution.[3] Appellees contend that article 4590i is not unconstitutional as applied to Appellant.

By her final point, Appellant contends that summary judgment was erroneous because Appellees engaged in fraudulent concealment, which tolled limitations. The Appellees present varying arguments denying that the doctrine of fraudulent concealment tolls limitations as to each of them.

## III. Applicable Law

### A. Summary Judgment

The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When a defendant moves for summary judgment based on an affirmative defense, such as the statute of limitations, the defendant, as movant, bears the burden of proving each essential element of that defense. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Once a defendant has established its statute of limitations defense as a matter of law, a nonmovant asserting fraudulent concealment must "come forward with proof raising an issue of fact with respect to" that claim to defeat summary judgment. *American Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex.1994) (citing *Nichols v. Smith,* 507 S.W.2d 518, 521 (Tex.1974)). Furthermore, a plaintiff must plead and prove application of the discovery rule as an affirmative defense to circumvent the bar of limitations. *See Smith v. Knight,* 608 S.W.2d 165, 166 (Tex. 1980); *DeLuna v. Rizkallah,* 754 S.W.2d 366, 368 (Tex.App.—Houston [1 st Dist.] 1988, writ denied).

---

2. Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Supp. 1998).

3. Tex. Const. art. I, § 13.

## B. Statute of Limitations

▮ The statute of limitations begins to run when a particular cause of action accrues. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). Typically, a cause of action accrues when a wrongful act causes injury, regardless of when the plaintiff learns of the injury. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990). But, when a cause of action accrues in a particular case is a question of law. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990).

Article 4590i governs all health care liability claims, which are defined as

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(4) (Vernon Supp.1998). Section 10.01 sets the statute of limitations at two years from the occurrence of the tort or the medical or health care treatment. *Id.* § 10.01. The statute further indicates that limitations applies regardless of any other law and regardless of minority or other legal disability. The Texas Supreme Court nonetheless held the statute of limitations unconstitutional to the extent that it cuts off a party's ability to bring suit before having a chance to discover the injury. Consequently a party must have a reasonable opportunity to discover an injury and bring suit within a reasonable time after the party knows, or reasonably should know of an injury. *See Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985); *Nelson v. Krusen*, 678 S.W.2d 918, 922–23 (Tex.1984) (op. on reh'g).

▮ Common law fraud claims have a four-year statute of limitations. *See Williams v. Khalaf*, 802 S.W.2d 651, 654 (Tex.1990) (op. on reh'g). Limitations generally does not begin to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence. *See Little v. Smith*, 943 S.W.2d 414, 420 (Tex.1997).

▮ The discovery rule applies if 1) the injury is inherently undiscoverable and 2) the evidence of the injury is objectively verifiable. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). The discovery rule only applies in limited circumstances, where at the time the injury arose, the plaintiff did not and *could not* know of the injury. *See, e.g., Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (discovery of legal malpractice); *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984) (action for permanent land damages accrues upon discovery of first actionable injury); *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976) (discovery of defamatory credit report); *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex.1972) (discovery that patient is fertile after vasectomy); *Gaddis v. Smith*, 417 S.W.2d 577, 578 (Tex.1967) (discovery of sponge in patient's body).

## IV. Accrual of Appellant's Claims

Appellant appeals only on her health care liability and fraud claims. Because summary judgment was granted on the basis that the statute of limitations had run on all claims, when limitations began to run on those claims is central to our disposition of Appellant's points. Therefore, we must first determine when Appellant's claims accrued.

### A. Health Care Liability Claims

▮ In her petition, Appellant complained of being placed on all-adult floors in the hospitals. She also alleged that she was denied phone privileges, that her privacy was invaded, and that she was overmedicated during her stays in the various hospitals. She further alleged that she remained depressed following her stays in each of the hospitals. Appellant was aware of each of these conditions at the time they occurred, or at least by her release from each hospital. Thus, neither the discovery rule, nor the open courts doctrine tolls limitations on her health care liability claims.

▮ Under article 4590i, limitations begins to run from 1) the date of the breach or tort; 2) the date the treatment that is the subject of the claim is completed; or 3) the

date the hospitalization for which the claim is made is completed. *See Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993); *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex. 1987). Her claims against each hospital began to run when she was discharged from each because she complains of the entire course of treatment she received from each hospital and there is no other readily ascertainable date of a breach or tort. *See Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995); *Kimball,* 741 S.W.2d at 372. Appellant's latest discharge was from Oak Bend on January 15, 1988. Therefore, limitations ran on the last of her health care liability claims against the hospitals in January of 1990.

▇▇ Appellant's health care liability claim against Dr. Shelton is largely based on the same allegations. The Supreme Court held in *Kimball* that when a patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment, such as in cases of misdiagnosis or mistreatment, limitations begins when the health care treatment that is the subject of the claim is completed. *See Kimball,* 741 S.W.2d at 372. Therefore, her claim against Dr. Shelton began to run after their last counseling session on August 26, 1989, at the latest. Limitations expired in August 1991.

### B. Common Law Fraud Claims

▇▇ Appellant contends by her first point that she has asserted a claim for common law fraud that is not governed by article 4590i, and that she brought this claim timely. Appellees contend that all of Appellant's claims, regardless of their labels in her pleadings, are health care liability claims governed by article 4590i because they all arise from the medical treatment she received while a patient of each Appellee. The portion of Appellant's pleadings recited above is entitled "Fraud." We do not decide whether Appellant stated a claim for common law fraud independent of article 4590i because it is not necessary to our disposition of this point.

Appellant's deposition was attached to several of the motions for summary judgment and is undisputed. Appellant testified as follows:

Q. ... When did you first begin discussing or hearing these rumors [of fraudulent admissions for the sole purpose of obtaining insurance proceeds] about [Psychiatric Institute of] Fort Worth with your Charter coemployees?

A. I can't provide you with a date. I would say ... the first year I was working there maybe.

Q. When was that?

A. I think I started working there in '90, 1990.

    ....

Q. Is that when the rumors first started surfacing?

A. I think. I mean, I think. I've heard about this stuff—you have to understand. I've heard about things like this since I've been in these hospitals.

    ....

Q. Do you remember when you started working at Charter in 1990?

A. I think it was August.

As a matter of law, Appellant's deposition establishes that she was on inquiry notice of any alleged fraud by 1990 at the latest. That started limitations running, whether these claims amount to common law fraud or health care liability. Even if we were to characterize Appellant's claims as common law fraud and apply the discovery rule, limitations would have run on those claims in 1994. Because Appellant did not file suit until August of 1995, we hold that her claims were barred as a matter of law, and need not decide whether she stated a claim for common law fraud.

We overrule point one.

Appellant's points five, six, and seven each contain two parts. The second part of each point contends that both her health care liability and fraud claims were timely brought under the discovery rule. Because we have held that Appellant's claims are all time-barred, we overrule those portions of points five, six, and seven.

## V. Tolling Limitations by Duress

By her second, third, and fourth points, Appellant contends that limitations was tolled on all of her claims by duress. Appellant alleged in her affidavit that Deas threatened her with violence and death if she filed suit against him or complained about his treatment of her as a therapist or a husband.

Appellant acknowledges in her appellate brief that the only duress complained of is that of Deas. Deas was a defendant in the underlying suit, but the trial court never gained jurisdiction over him and the suit proceeded without him. Appellant argues that:

> [I]t would be manifestly unjust to allow any of the Defendants to reap any benefit from Robert Deas' [sic] barbaric, violent, and threatening behavior towards the Plaintiff. It is clear that Robert Deas' [sic] involvement, as Plaintiff's personal counselor during much of the treatment in question who later became her husband, was significant and crucial to Plaintiff's claims. Plaintiff could not have pursued any complaint or legal action against any of the Defendant health care providers without issues regarding Robert Deas playing a key if not central role.

By this argument, Appellant urges us to apply duress imposed by Deas to toll limitations on her claims against all other Appellees. Appellant cites us to no authority and our independent research has uncovered none authorizing such a result. Furthermore, nowhere in her affidavit or pleadings does Appellant allege that Deas's threats encompassed suits against anyone but himself and possibly Oak Bend.

Appellant cites us to several cases for the proposition that duress is available to toll limitations in fraud claims. However, the cases she cites all discuss duress as tolling limitations in the context of causes of action for *duress*. And while Appellant admits that Texas has never recognized duress as a tolling doctrine under article 4590i, she urges this court to do so for the first time. We decline to apply the tolling doctrine of duress to article 4590i. We further hold that even if duress can be applied to toll limitations in fraud claims, duress imposed by a third party cannot inure to a plaintiff's benefit to toll limitations as to those parties who did not impose the duress.

We overrule points two and three.

Appellant specifically asserts by point four that the duress of Deas tolled limitations as to Oak Bend. However, Oak Bend correctly responds that Deas no longer worked for them at the time of the alleged duress, and that even if he had, his actions amounted to intentional torts and therefore Oak Bend could not be vicariously liable. In Texas, an employer is only liable for the willful and malicious acts of its employees when those acts are done within the scope of employment. *See Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 364 (Tex.App.—Houston [14th Dist.] 1987, no writ). Therefore, Deas was a third party as to Oak Bend as well, and his actions could not toll limitations as to Oak Bend.

We overrule point four.

## VI. Unconstitutionality of Article 4590i

In the first half of each of points five and six, Appellant argues that article 4590i is unconstitutional insomuch as it prevents her from bringing her common law fraud claims. Specifically, she contends that by shortening the limitations period to two years for all claims regarding health care, article 4590i violates the open courts provision of the Texas Constitution as applied to common law fraud claims, which have a four-year statute of limitations.

This court recently recognized that a plaintiff may make a claim for common law fraud that is not governed by article 4590i. *See Shannon v. Law–Yone*, 950 S.W.2d 429, 436 (Tex.App.—Fort Worth 1997, pet denied). Because fraud claims exist independent of article 4590i, the statute of limitations of article 4590i cannot act to unconstitutionally cut off a litigant's access to the courts on common law fraud. Therefore, article 4590i is not unconstitutional as applied to causes of action for common law fraud.

We overrule the remainder of points five and six.

In the first half of point seven, Appellant asserts that the limitations period provided by article 4590i for health care liability claims is unconstitutional. Apparently, Appellant contends that the limitations period is unconstitutional without application of the discovery rule. She correctly states that the Texas Supreme Court has held the strict two-year statute unconstitutional to the extent that "it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit." *Nelson*, 678 S.W.2d at 923; *see Neagle*, 685 S.W.2d at 12. Through these cases, the Texas Supreme Court recognized that the legislature intentionally disavowed the discovery rule in medical malpractice, but applied the open courts doctrine to prevent the statute from being unconstitutional.

Appellant's argument seems to presuppose that we will hold that no tolling provision applies to her claims, and seeks to hold the statute unconstitutional on that basis. However, we have already acknowledged that the open courts doctrine does apply to article 4590i claims. We simply held that Appellant was aware of her health care liability claims at the time the treatment complained of occurred, and therefore her right to a remedy was not unconstitutionally cut off. We find no merit in Appellant's argument.

We overrule point seven.

### VII. Fraudulent Concealment

In Appellant's final point, she contends that Appellees were estopped from asserting the statute of limitations because they engaged in fraudulent concealment. Fraudulent concealment is an equitable doctrine which estops a party from relying on the affirmative defense of limitations until the plaintiff learns of the right of action, or should have learned of the right through the exercise of reasonable diligence. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The Court explained that

> The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of

action. Knowledge of such facts is in law equivalent to knowledge of the cause of action.

*Id.* at 909. We have already held that Appellant discovered her injury by 1990 at the latest. Appellant did not file her claims until 1995, more than four years after she knew facts which would have led the reasonably prudent person to make an inquiry into the alleged fraud. Therefore, the doctrine of fraudulent concealment did not estop any of the Appellees from asserting the affirmative defense of limitations.

We overrule point eight.

### VIII. Conclusion

We do not decide whether Appellant has stated a cause of action for common law fraud or merely claims under article 4590i because we hold that Appellant was on inquiry notice of her injury by 1990 and her claims filed in 1995 were barred by limitations under both a two-year and a four-year statute of limitations. Likewise, the discovery rule and the open courts doctrine do not prevent summary judgment for Appellees. Neither do the doctrines of duress or fraudulent concealment defeat summary judgment for Appellees on the basis of limitations. Furthermore, article 4590i does not violate the open courts provision of the Texas Constitution with regard to common law fraud claims because we have held that common law fraud claims may be brought independently of article 4590i.

All of Appellant's points are overruled. We affirm the trial court's summary judgment.