**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-10731

MARK ROTELLA,

Plaintiff-Appellant,

VERSUS

WILLIAM M. PEDERSON, M.D., WILLIAM M. PEDERSON, M.D.P.A.,
LESLIE H. SECREST, M.D., LESLIE H. SECREST, M.D.P.A.,
JOHN M. ZIMBUREAN, M.D., JOHN M. ZIMBUREAN M.D.P.A.,
LARRY W. ARNOLD, M.D., LARRY W. ARNOLD, M.D.P.A.,
BRADFORD M. GOFF, M.D., BRADFORD M. GOFF M.D.P.A.,
FRED L. GRIFFIN, M.D., FRED L. GRIFFIN, M.D.P.A.
ANGELA M. WOOD, M.D., ANGELA M. WOOD M.D.P.A.,
GARY LEE ETTER, M.D., GARY LEE ETTER, M.D.P.A.,
GROVER LAWLIS, M.D., GROVER LAWLIS, M.D.P.A.
DALLAS PSYCHIATRIC ASSOCIATES, A Partnership

Defendants-Appellees.[1]

Appeal from the United States District Court
For the Northern District of Texas

July 14, 1998

Before REAVLEY, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge.

Plaintiff-Appellant, Mark Rotella ("Rotella"), appeals from

---

[1]Rotella's appeal from the district court order as to Defendants-Appellees Ronald Fleischmann, M.D. and Ronald Fleischmann, M.D.P.A. were dismissed with prejudice post-argument.

1

the district court's order granting summary judgment for defendants based on its finding that Rotella's claims were barred by limitations.  We affirm.

**FACTS AND PROCEEDINGS**

On February 19, 1985, Rotella, then age sixteen, was admitted to Brookhaven Psychiatric Pavilion ("Brookhaven").  Defendants-appellees are physicians and professional associations which had treating privileges at Brookhaven during Rotella's hospital stay. Although Rotella was initially admitted involuntarily on the request of his mother and his prior therapist after a suicide threat, he signed for a voluntary admission rather than face an involuntary commitment proceeding.  He was discharged sixteen months later, on June 16, 1986, shortly after his eighteenth birthday.  Rotella made several requests for release pursuant to Texas law.  Each time he withdrew his request prior to the expiration of the 96 hour waiting period, except one occasion when he was advised that his application was not properly submitted and he would have to make another application.  He characterizes the withdrawals of his requests for release as coerced.

In April of 1994, Wendy Edelman, another former patient at Brookhaven, contacted Rotella and urged him to file a lawsuit against the doctors who had treated them at Brookhaven because the doctors had based their decisions to keep patients hospitalized on

2

economic rather than medical criteria.

In June 1994, Brookhaven's parent company, Psychiatric Institutes of America ("PIA"), and PIA's Texas Regional Director, Peter Alexis pleaded guilty to charges of fraud and conspiracy. The underlying fraud related to doctors extending the length of stay for patients in psychiatric hospitals beyond medical necessity in order to maximize health insurance benefit payments.

In July 1994, Defendants-Appellees filed suit in Texas state court against Rotella and his attorney alleging that Rotella slandered them by telling third parties that they "received a $10,000 bonus for each bed filled over the Christmas holidays." Rotella filed a counterclaim asserting civil rights violations and state law causes of action arising out of his treatment at Brookhaven in 1985-86. He alleged that in-patient treatment was generally inappropriate for his condition and that specific treatments, such as the use of restraints and limitations on his movements and privacy, were inappropriate and abusive.

The state court granted summary judgment for defendants on Rotella's state claims, finding that they were barred by limitations and denied defendants' motions for summary judgment on the civil rights claims. Rotella's counterclaim was then severed and, on March 3, 1997, was removed to federal court.

On June 30, 1997 the district court denied Rotella's motion to reconsider summary judgment on the state law claims and, on reconsideration, granted summary judgment for defendants on the

civil rights claims, finding that they were barred by limitations as well. Final judgment was entered for defendants and Rotella appealed.

After this case was briefed, the Texas Court of Appeals at Fort Worth handed down two opinions addressing limitations issues in the context of former psychiatric patients suing PIA and related doctors and entities. *See Savage v. Psychiatric Institute of Bedford, Inc.*, 965 S.W.2d 745 (Tex.App.-Fort Worth 1998, writ requested); *see also Slater v. National Medical Enterprises, Inc.*, 962 S.W.2d 228 (Tex.App.-Fort Worth 1998, writ requested). While neither opinion directly disposes of every issue before this court, both support the district court's determination that Rotella's claims are time barred.

### ANALYSIS

### *Statute of limitations*

We review the district court's grant of summary judgment on the basis of limitations *de novo*. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996).

Rotella does not dispute that his suit was filed more than four years after he was discharged from Brookhaven, but posits several theories for tolling the statutes of limitations. Rotella bears the burden of proof on each of his tolling theories. *See Weaver v. Witt*, 561 S.W.2d 792, 794, n.2 (Tex. 1977).

**a. Are Rotella's Claims Health Care Liability Claims?**

All health care liability claims must be brought within two years of "the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp. 1997). Rotella contends that his case is fundamentally one of fraud which is governed by a four year statute of limitations.

In *Shannon v. Law-Yone*, 950 S.W.2d 429 (Tex. App.-Fort Worth 1997, writ denied), the Fort Worth Court of Appeals considered this limitations question in a context that was nearly identical to this case. Shannon was a voluntary inpatient at Brookhaven for six weeks during 1989. Shannon brought suit in 1993 alleging that Brookhaven doctors and other employees fraudulently induced him to lengthen his stay and coerced him into waiving a release that he requested resulting in emotional strain, trauma and anguish. The court held that Shannon's common law fraud claim is not a "health care liability claim" as defined by art. 4590i and it is therefore governed by the four-year fraud statute of limitations. *Id.* at 438. Making an "*Erie* guess"[2] as to how Texas courts would resolve this issue based on the intermediate Texas appellate court opinion in *Shannon*, we hold that the four-year statute of limitations applies to Rotella's fraud claims.

**b. Counterclaims - § 16.069, Texas Civil Practice and Remedies Code**

---

[2]*See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Rotella's claims were originally filed as counterclaims to a petition brought by defendants against him, his attorney and another former patient in state court. The original suit alleged that Rotella slandered defendants in 1994 by stating that the defendants "received a $10,000 bonus for each bed filled over the Christmas holiday." Under Texas law, an individual who has a counterclaim which is otherwise time-barred may file that counterclaim within thirty days of the date his answer is due, if the counterclaim "arises out of the same transaction or occurrence that is the basis of [the] action." § 16.069(a) TEX.CIV.PRAC.& REM. CODE ANN. (Vernon 1986). Rotella claims that there is a "critical link" between the alleged 1994 statement and his 1984-86 stay at Brookhaven because the slander suit alleged that Rotella had harbored ill will toward his doctors since his Brookhaven treatment. He also argues that the counter claims "arose out of" the same occurrence because Rotella's lawyer was also named as a defendant in the slander suit and a reasonable juror could conclude that the slander suit was a preemptive strike to intimidate Rotella and his attorney and prevent them from filing suit against the defendants.

The district court rejected this argument, holding that Rotella's counterclaim did not arise from the same transaction and therefore could not be revived under § 16.069. Relying on *Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88-89 (Tex.

6

1977)(addressing art. 5539c, the predecessor statute of § 16.069), the district court reasoned, "This conclusion is consistent with the purposes of the statute. 'The statute was intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitation before asserting his own claim.'"

Appellees urge us to affirm the district court, arguing that Rotella's claims arose from his hospital stay, while the slander claim arose out of a statement made eight years later in a related but separate incident. Therefore, Appellees argue, § 16.069 does not control, because the counterclaims did not arise out of the same incident. In *Leasure v. Peat, Marwick, Mitchell & Co.*, 722 S.W.2d 37 (Tex.App.-Houston[1st Dist.] 1986, no writ), a Texas court held that Leasure's counterclaims based on an audit that Peat Marwick had performed in 1976-77 did not arise from the same transaction or occurrence as Peat Marwick's original claim for malicious prosecution which was based on Leasure's 1980 lawsuit. *Id.* at 38-39. The court emphasized that Peat Marwick's claim, while it had some relationship to the 1976-77 audit that was the subject of the counterclaim, was based on Leasure's alleged wrongful conduct which occurred some three years later.

Rotella cites two cases to rebut the holding in *Leasure,* neither of which convince us that the district court's reliance on *Leasure* was misplaced. *Fluor Engineers and Constructors, Inc. v.*

*Southern Pacific Transp. Co.*, 753 F.2d 444, 449 (5th Cir. 1985), summarily states, without analysis, that the claims in question arose out of the same transaction. *Barraza v. Koliba*, 933 S.W.2d 164, 168 (Tex.App.-San Antonio 1996, writ denied), held that a suit seeking to construe a title conveyance document and a counterclaim alleging that one party misrepresented what was being conveyed by that document arose from the same transaction. We agree with the district courts' conclusion that Rotella's claims and the state court slander claims arose from two separate incidents.

Finally, the preemptive strike argument is meritless. Either the claims were already time-barred and there was nothing left to preemptively strike or they are not time-barred and they do not need § 16.069 for revival.

We therefore hold that § 16.069 does not operate to revive Rotella's time-barred counterclaims.

**c. The Discovery Rule**

Art. 4590i indicates that its limitations provisions apply regardless of any other law or legal disability. The Texas Supreme Court nonetheless held the statute unconstitutional to the extent that it cuts off a party's ability to bring suit before having a chance to discover the injury. Consequently, a party must have a reasonable opportunity to discover an injury and bring suit within a reasonable time after the party knows, or reasonably should have known of an injury. *See Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.

8

1985).

Rotella contends that he did not discover his injury until April of 1994 when he spoke to Wendy Edelman, and that it was not reasonably possible for him to have discovered it prior to that date.  He reasons that the emotional disorders that resulted from the defendants' wrongful acts were impossible for him to detect on his own and affected his ability to understand and pursue his remedies.

A party is deemed to be aware of an injury and its cause when a reasonable person, under the same circumstances, exercising reasonable diligence, would be aware of it.  *See Cathedral of Joy Baptist Church v. Village of Hazelcrest*, 22 F.3d 713, 717 (7th Cir. 1994).  Section 16.001, TEX. CIV. PRAC. & REM. CODE, provides that a person of unsound mind is under a legal disability and that "[i]f a person entitled to bring an action is under a legal disability when the cause of action accrues, the time of the disability is not included in the limitations period."  The district court found that there was no summary judgment evidence in the record to support a finding that Rotella lacked the requisite mental capacity when he was discharged in June of 1986.  Rotella does not specifically assert that he qualifies for unsound mind tolling pursuant to § 16.001.  Rather, he contends that he has created a fact question on whether he knew or should have known of his injury earlier.

Rotella knew what happened during his hospitalization, who was

9

involved in his treatment and how it impacted him at time of his release. Therefore, he was on notice of his injury on the date of his release, at the latest. *See Slater v. National Medical Enterprises, Inc.*, 962 S.W.2d 228, 233 (Tex.App.-Fort Worth 1998, writ requested). Rotella's argument relies on his mental illness to excuse his late filing, while not specifically evoking or establishing the elements of tolling based on an unsound mind theory. Without resort to a mental incapacity argument under § 16.001, his discovery argument fails.

**d. Fraudulent concealment**

Under Texas fraudulent concealment law, a defendant must be charged with a legal duty through a special relationship to reveal the concealed facts to the plaintiff before he can claim tolling under this theory. *See Dougherty v. Gifford*, 826 S.W.2d 668 (Tex.App.-Texarkana 1992, no writ). The duty to disclose in medical contexts ends when the physician-patient relationship ends. *See Thames v. Dennison*, 821 S.W.2d 380, 384 (Tex.App.-Austin 1991, writ denied). Rotella does not dispute that his relationship with defendants ended on June 16, 1986 when he was discharged from Brookhaven. Under *Thames*, his fraudulent concealment theory does not save his causes of action from the limitations bar.

However, Rotella argues that *Thames*, an intermediate Texas appeals court decision, cannot serve as the basis of this court's decision because it relies on language from the dissent in

10

*Borderlon v. Peck*, 661 S.W.2d 907 (Tex. 1983), and is inconsistent with the Texas Supreme Court's majority opinion in that case. We disagree with Rotella's reading of *Borderlon.* In fact, the *Borderlon* majority opinion holds only that art. 4590i did not abolish fraudulent concealment as a defense to limitations in medical malpractice actions. *Id.* at 908. It recognizes that a claim of fraudulent concealment must be based solely on the physician-patient relationship. *Id.* The *Borderlon* majority states, "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which if pursued, would lead to discovery of the concealed cause of action." *Id*. at 908. Rather than focusing on the end of the patient-doctor relationship, the majority focused on the fact that the patient/plaintiff had information that put her on inquiry just four days after the end of that relationship and still outside the limitations period. We do not read the *Borderlon* majority as inconsistent with the *Borderlon* dissent regarding the effect of the termination of the doctor/patient relationship. Neither is *Borderlon*'s holding inconsistent with *Thames* on this issue*.*

Finally, Rotella's reliance on *Gatling v. Perna*, 788 S.W.2d 44 (Tex.App.-Dallas 1990, writ denied), is misplaced. That opinion states that it could not, as a matter of law, fault a psychologically disturbed patient for relying on an opinion

11

expressed by a psychiatrist, under whose regular care she had been for four years, to the exclusion of a physician she had consulted on only one occasion. 788 S.W.2d at 47. However, Gatling continued under her long-term psychiatrist's care through the time she rejected the other doctor's warning. Therefore, the holding in *Gatling* does not inform the question of the effect of the termination of the doctor/patient relationship.

After the duty to disclose ended at Rotella's discharge, the limitations period began to run as soon as the injury was discovered or when it might have been discovered by the exercise of reasonable diligence. *See Slater v. National Medical Enterprises, Inc.*, 962 S.W.2d 228, 233 (Tex.App.-Fort Worth, 1998, writ requested). Because the discovery rule does not extend the limitations period beyond the end of Rotella's hospital stay, the argument for fraudulent concealment tolling fails as well.

**3. Rotella's claims under 42 U.S.C. § 1983.**

There is no federal statute of limitations for civil rights actions brought pursuant to § 1983. Consequently, courts construing § 1983 "borrow" the forum state's general personal injury limitations period. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control. *See Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980). Therefore our conclusions relative to Rotella's

state tolling claims control this question as well.

Rotella argues that Texas fraudulent concealment doctrine is inconsistent with the federal fraudulent concealment doctrine because the federal doctrine does not hold that the duty to disclose in a medical context ends when the physician/patient relationship ends. First, no authority supports this contention. At most, federal law is silent on this point. Second, such inconsistency is irrelevant. Although a state's tolling provisions cannot be inconsistent with the policies underlying § 1983, there is no authority for the proposition that it must be consistent with the federal tolling provisions. *See Rubin v. O'Koren*, 644 F.2d 1023, 1025 (5th Cir. 1981). Rotella makes no argument, and we see no basis for holding, that the Texas tolling laws are inconsistent with policies underlying § 1983. Therefore, we conclude that the district court correctly dismissed the federal claims because they are likewise barred by limitations.

## CONCLUSION

Based on the foregoing, we affirm the district court's dismissal because Rotella's claims are barred by the applicable statutes of limitations.

AFFIRMED.

13