

# NUMBER 13-16-00433-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TOM TUCKER,                                                                    Appellant,

v.

CARL BEDGOOD AND LAURA BEDGOOD,                          Appellees.

### On appeal from the County Court at Law No. 1 of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

This appeal arises from a real estate dispute primarily between appellant Tom Tucker and Carl Bedgood (Bedgood). The trial court granted summary judgment dismissing Tucker's suit against the appellees, Bedgood and his wife Laura (the Bedgoods). By what we construe as four issues on appeal, Tucker argues that the trial court erred because there were disputed issues of material fact. We conclude that the

Bedgoods have conclusively demonstrated that Tucker's claims are time-barred, and we affirm.

## I.     BACKGROUND

According to the summary judgment evidence, in 2005, Tucker and Bedgood entered into an investment agreement to purchase several parcels of land on the site of the La Salle Hotel in Port O'Connor, Texas.[1]  The men intended to develop the lots for sale, with Tucker to serve as the realtor and Bedgood, an attorney, to handle title work and other matters.  Three of the parcels are at issue in this appeal.  Lot A–10 was purchased by Tucker, and the adjoining Lots A–9 and A–11 were purchased by the Bedgoods.  As of 2005, Lot A–9 was sixty feet wide while Lots A–10 and A–11 were seventy-five feet wide.

In 2006, James P. Bryan Jr. approached Tucker to express interest in purchasing Lot A–9 from the Bedgoods.  According to Tucker's summary judgment affidavit, Bryan offered $225,000 for the lot in its current condition, but stated that he was willing to pay an additional $50,000 if the width of Lot A–9 could be increased ten feet, to a total width of seventy feet.  Tucker alleges that he then entered into an oral agreement with Bedgood under which each man would contribute five feet of adjoining land to complete the sale with Bryan; Tucker would cede ten feet from Lot A–10 to Bryan, and Bedgood

---

[1] This opinion is our second occasion to consider the summary judgment in favor of the Bedgoods. *See Tucker v. Bedgood*, No. 13-15-00127-CV, 2016 WL 1072623, at *1 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op.).  In our previous opinion, we dismissed Tucker's appeal for want of jurisdiction, reasoning that there was an outstanding counterclaim for attorneys' fees which prevented the trial court from rendering a final and appealable judgment.  *See id.*  On remand, the Bedgoods nonsuited their claim for attorney's fees, and the trial court entered a reformed judgment which cured the jurisdictional defect.  Our prior opinion thoroughly laid out the factual background of this case, and we need not duplicate it here except to explain the reasons for our decision.  *See id.* at *1–3.  However, Tucker wishes to correct one aspersion we have cast against him:  Tucker is not an attorney, as we wrote in our prior opinion.  *See id.* at *1.

would reimburse Tucker by transferring five feet from A–11 to him. Tucker alleges that he and Bedgood orally agreed that they would equally divide the extra $50,000. In March 2006, the Bedgoods entered a sale contract with Bryan and on May 23, 2006, Tucker and the Bedgoods executed a warranty deed with vendor's lien conveying the seventy-foot Lot A–9 to Bryan (the Bryan transaction). The Bedgoods subsequently received $250,000 for the sale and Tucker received $25,000.

In 2008, a dispute arose between Tucker and Bedgood regarding some of the properties in the La Salle Hotel development, wherein Tucker alleged that Bedgood had violated their 2005 investment agreement. However, the dispute did not involve Lots A–9, A–10, or A–11. On August 28, 2008, Tucker and the Bedgoods executed a "Mutual Release" intended to resolve their dispute (the Settlement).

In 2014, Tucker instituted this suit in which he claimed that he had recently discovered that Bedgood had never transferred five feet from Lot A–11 to Tucker's Lot A–10, as Bedgood had orally agreed during the negotiation of the transaction with Bryan. In his petition, Tucker alleged that he had effectively contributed all of the ten additional feet that Bryan had requested, but had received only half of the additional $50,000 that Bryan offered to pay. Tucker claimed that he only discovered this fact when the Bedgoods conveyed Lot A–11 to the Texas Dow Employees Credit Union (TDECU) in lieu of foreclosure, with a width of seventy-five feet rather than the agreed upon figure of seventy. Tucker pleaded theories of common law fraud, statutory fraud, breach of contract, breach of fiduciary duty, unjust enrichment, and civil conspiracy.

The Bedgoods filed a hybrid traditional and no-evidence motion for summary judgment. Among their traditional grounds, the Bedgoods argued that Tucker's claims

were barred by limitations. The Bedgoods noted that the underlying Bryan transaction was entered in 2006, that the parties entered the Settlement in 2008, and that Tucker filed this suit in 2014. They argued that this delay exceeded the respective statutes of limitations for each of Tucker's claims, the longest of which was four years. In his response, Tucker argued that limitations should be tolled for all of his claims under the discovery rule and the doctrine of fraudulent concealment. Tucker also argued that limitations for his breach of contract claim should be tolled under what he argued was a special accrual rule for that type of claim: that limitations only begins to run when the contracting parties treat the contract as terminated.

The trial court entered summary judgment in favor of the Bedgoods without specifying grounds. This appeal followed.

## II. STANDARD OF REVIEW

The standard for reviewing a summary judgment under Texas Rule of Civil Procedure 166a(c) is whether the moving party carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Id.* In reviewing a trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence in the light most favorable to the nonmovants. *Id.*; *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material

4

fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of his injury. *KPMG*, 988 S.W.2d at 748; *see Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988).

If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *KPMG*, 988 S.W.2d at 748. A plaintiff who asserts fraudulent concealment to avoid summary judgment on limitations grounds must raise a fact issue that would support this assertion. *Shah*, 67 S.W.3d at 841. If from the facts conclusively shown, the trial court can say that as a matter of law that Tucker could have discovered the operative facts by the exercise of reasonable diligence more than four years before his suit was filed, then there is no genuine issue of material fact and the other party is entitled to summary judgment. *See Bush v. Stone*, 500 S.W.2d 885, 889 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.); *see also Andress v. Condos*, 672 S.W.2d 627, 631 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.).

When the trial court's judgment does not specify which of several grounds proposed was dispositive, we affirm on any ground offered that has merit and was preserved for review. *See Joe v. Two Thirty Nine JV*, 145 S.W.3d 150, 157 (Tex. 2004).

### III.   FRAUDULENT CONCEALMENT AND THE DISCOVERY RULE

We first address what we construe as Tucker's third appellate issue. By this issue, Tucker argues that the trial court could not have correctly granted a traditional summary judgment against all of his claims on the basis of limitations. According to Tucker, the statute of limitations must be tolled by the operation of fraudulent concealment and the discovery rule. Tucker contends that he had a fiduciary relationship with

5

Bedgood as both his attorney and his joint-venturer. He asserts that in light of this fiduciary relationship, we must presume that the discovery rule was applicable. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988) (holding that a fiduciary duty justified the discovery rule). Similarly, Tucker argues that Bedgood fraudulently concealed the facts at issue. Under either theory, he explains, the evidence creates a fact issue as to when limitations began to run.

## A.     Applicable Law

Common law fraud, breach of fiduciary duty, and breach of contract are subject to four-year limitations periods. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (statutory fraud); *Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.) (breach of fiduciary duty and breach of contract); *Slater v. Nat'l Med. Enters., Inc.*, 962 S.W.2d 228, 233 (Tex. App.—Fort Worth 1998, pet. denied) (common law fraud). Unjust enrichment and civil conspiracy are governed by a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007) (per curiam) (unjust enrichment); *In re Estate of Herring*, 970 S.W.2d 583, 586 (Tex. App.—Corpus Christi 1998, no pet.) (civil conspiracy).

"As a general proposition, a cause of action accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016). The discovery rule is an exception to the statute of limitations which defers accrual of a cause of action until the plaintiff knew or through the exercise

6

of reasonable diligence should have known of the facts giving rise to the cause of action.[2]
*See Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *DeWolf v. Kohler*, 452 S.W.3d 373, 391 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "Similar to the discovery rule exception, where fraud is alleged, we have granted the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud." *Computer Assocs.*, 918 S.W.2d at 455. Fraudulent concealment only tolls the statute of limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011).

"Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with reasonable diligence, would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law." *Matter of Estate of Matejek*, 928 S.W.2d 742, 744 (Tex. App.—Corpus Christi 1996), *writ denied sub nom.*, *In re Estate of Matejek*, 960 S.W.2d 650, 651 (Tex. 1997) (per curiam); *see Field Measurement Serv., Inc. v. Ives*, 609 S.W.2d 615, 619 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). In a confidential or fiduciary relationship, "'diligence on the party defrauded does not exact as prompt and as searching an inquiry into the conduct of the other party as where the parties were strangers or were dealing with strangers.'" *Field Measurement*, 609 S.W.2d at 619 (quoting *Bush*, 500 S.W.2d at 890). However, the existence of a fiduciary relationship does not abrogate the rule that

---

[2] In our review, the purposes of time limitations "must be kept in mind": to dispose of stale claims; to settle looming uncertainties; to foster diligence; and to compel the assertion of claims while the evidence is still fresh, fully available, and subject to verification. *See Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 & 457 (Tex. 1996).

7

diligence in discovering the breach of fiduciary duty or fraud is required; rather, it affects the application of the rule. *Courseview, Inc. v. Phillips Petroleum Co.*, 312 S.W.2d 197, 205 (Tex. 1958); *G. Prop. Mgmt., Ltd. v. Multivest Fin. Servs. of Tex., Inc.*, 219 S.W.3d 37, 48 (Tex. App.—San Antonio 2006, no pet.). The trust and confidence of a fiduciary relationship are among the circumstances to be considered in determining whether a breach of a duty or fraud might have been discovered by the exercise of reasonable diligence. *Courseview*, 312 S.W.2d at 205; *G. Prop. Mgmt.*, 219 S.W.3d at 49; *Andress*, 672 S.W.2d at 630. In other words, one in a relationship of trust and confidence is not "always justified as a matter of law in neglecting every precaution until something occurs to arouse his suspicions." *G. Prop. Mgmt.*, 219 S.W.3d at 49 (quoting *Courseview*, 312 S.W.2d at 205).

## B. Discussion

Here, Tucker contends that the discovery rule and fraudulent concealment must toll limitations for his claims. Viewing this evidence in the light most favorable to Tucker, *see KPMG*, 988 S.W.2d at 748, we will assume for the sake of argument that Tucker has otherwise shown the applicability of the two tolling rules he advances and that Tucker also established a fiduciary relationship with Bedgood.[3] Even assuming this to be the case, Tucker would not be entitled to relief. Both fraudulent concealment and the discovery rule share a common feature: that limitations will begin to run when the plaintiff, through the exercise of reasonable diligence, should have known of the critical

---

[3] *See*, *e.g.*, *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 878 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (op. on reh'g) (defining joint-venturer relationship as fiduciary in character); *Kirby v. Cruce*, 688 S.W.2d 161, 165 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (same).

8

facts.  *See Computer Assocs.*, 918 S.W.2d at 455.  Tucker's assertions of fraudulent concealment and the discovery rule each falter on this reasonable diligence component.

In support of his motion for summary judgment, Bedgood offered excerpts from Tucker's deposition.  At his deposition, Tucker testified that he was experienced in the real estate business, having taken several property law classes and been a licensed realtor for ten years at the time of the 2006 transaction.  Tucker testified that nonetheless, he signed the closing documents for the Bryan transaction without reading them.  He attested that he simply never noticed the absence of a deed or any other paperwork signifying that Bedgood had arranged a transfer of five feet, which went unmentioned until 2014.  Tucker testified that Bedgood, an attorney, had even previously advised him to look for and carefully store the vital documents relating to his real estate transactions.  "Due diligence may include asking a contract partner for information needed to verify contractual performance."  *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam).  If a contracting party responds to such a request with false information, accrual may be delayed for fraudulent concealment.  *Id.*  "But failing to even ask for such information is not due diligence."  *Id.*

In response to the Bedgoods' motion for summary judgment, Tucker could not produce a contract memorializing an agreement with Bedgood, but instead relied upon an alleged oral agreement for the transfer of the five feet.  Put differently, Tucker, who was schooled and experienced in real estate law, relied on an oral agreement as the prior basis for a transfer of real property.  *Cf.* TEX. BUS. & COM. CODE ANN. § 26.01 (West, Westlaw through 2015 R.S.).  Thus, to whatever extent we may factor Tucker's lack of diligence prior to the transaction into our analysis, we do so here.  *Compare Cooper v.*

9

*Lee*, 12 S.W. 483, 487 (Tex. 1889) (faulting a fraud plaintiff for not making any investigation before completion of real estate transaction, stating that while a fiduciary relationship made plaintiff's reliance on the fiduciary's representations more reasonable, "we still do not, on the other hand, believe that the continued existence of the relation justified him neglecting every precaution that a prudent man would exercise about his property") *with Powell v. March*, 169 S.W. 936, 938 (Tex. Civ. App.—Dallas 1914, writ ref'd) (crediting fraud plaintiff who, prior to transaction, "made inquiries as to the character of E.D. Coston and of his reputation for truth and veracity before purchasing said property . . . and that he exercised all possible diligence to discover any fraud, but same was not discovered by him until the date heretofore alleged . . . .").

Even when Tucker's first dispute with Bedgood arose in 2008, Tucker did not investigate his past dealings with Bedgood so as to discover any problems related to the 2006 Bryan transaction. Tucker did not investigate Bedgood's compliance with their oral agreement even though Tucker was then alleging that Bedgood had dishonored other agreements relating to the La Salle Hotel project. Rather, Tucker testified at his deposition that up until 2014, he operated under the continued assumption that Bedgood had transferred five feet from Lot A–11. Tucker operated under this assumption even as he signed the Settlement in 2008, a broad document which released virtually any conceivable claim Tucker could have had against Bedgood relating to all of their dealings on the La Salle Hotel project. Finally, Tucker testified that he did not read this Settlement. *See, e.g., Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 225 (Tex. App.—El Paso 1991, writ denied) ("[A]n absence of due diligence was shown by his failure to read the [settlement and release] presented to him.").

10

The record also conclusively establishes that if Tucker had exercised minimum diligence in 2006 or even the lead-up to the 2008 Settlement, he would have discovered that Bedgood did not transfer five feet to him. This information would have been apparent from Tucker's own records. This information would also have been part of the public record. *See*, *e.g.*, *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) (rejecting fraud claim in part because the allegedly concealed information was part of the public record); *In re Estate of McGarr*, 10 S.W.3d 373, 377 (Tex. App.—Corpus Christi 1999, pet. denied) (same); *see also Ford*, 235 S.W.3d at 617.[4]

The facts of this case resemble those in *Field Measurement Service* (FMS), which similarly involved fraud allegations and an oral agreement in a land development dispute. *See* 609 S.W.2d at 617. The two parties testified to different versions of the deal regarding FMS's acquisition of 2.5 acres of land. *Id.* at 617–18. FMS's majority owner, Duke, testified that he had orally arranged with the minority owner, Ives, that Duke would keep 1.85 acres and Ives would keep the remaining .65 acres. *Id.* at 617. Ives agreed with this part of Duke's account, but testified that Duke had also orally agreed to later transfer the 1.85 acres to Ives, which Duke denied. *Id.* at 617–18. In 1967, the president of FMS signed a deed in Ives's office, with Duke present, which Ives had led both men to believe would convey the 1.85 acres directly to Duke. *Id.* at 618. "The deed did not convey title to Duke, however, but conveyed the property to Ives." *Id.*

---

[4] We also note, but do not rely on, the fact that this information would presumably have been available to Tucker on the Multiple Listing Service (MLS), a service used by realtors such as Tucker to facilitate real estate transactions and publicly document the details of those transactions. *See Harris Cnty. Appraisal Dist. v. Integrity Title Co., LLC*, 483 S.W.3d 62, 65 n.1 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). By way of illustration, Tucker testified that he later discovered that Bedgood had not transferred five feet to him through his MLS access: in 2014, he read on the MLS that Bedgood had transferred Lot A–11 to TDECU in 2014 as a parcel retaining its original width of seventy-five feet.

When Duke filed his fraud claim beyond the four-year statute of limitations, we upheld the take-nothing judgment, noting that Duke was present at the president's execution of the deed, that there had already been a dispute over the ownership of the land, but that Duke did not read the deed before its execution. *Id.* at 618 & 620. Despite the existence of a confidential relationship between Duke and Ives, Duke was not relieved of that minimum diligence of reading the deed. *See id.* at 619–20.

For the same reason, we conclude that the Bedgoods have conclusively shown that Tucker failed to exercise reasonable diligence, especially in light of his inquiry notice from the parties' 2008 dispute. *See id.*; *see also Estate of Matejek*, 928 S.W.2d at 744 (discussing inquiry notice). The Bedgoods' evidence also conclusively demonstrates that if Tucker had exercised reasonable diligence during the 2006 transaction or even in the time leading up to Settlement in 2008, he would have discovered the facts which are the basis of this suit—facts which would have been as evident in Tucker's personal records as they were in the public record. *See KPMG*, 988 S.W.2d at 748. Thus, even assuming the application of fraudulent concealment and the discovery rule, Tucker's claims accrued in 2008 at the latest, *see Estate of Matejek*, 928 S.W.2d at 744, given that the underlying legal injury occurred in 2006. *See Sw. Energy*, 491 S.W.3d at 721. Tucker's evidence fails to create a fact issue to the contrary. *See KPMG*, 988 S.W.2d at 748.

IV.    LIMITATIONS FOR BREACH OF CONTRACT CLAIM

As a subset of his third issue, Tucker argues that limitations does not bar his breach of contract claim because of the special considerations which apply to that type of claim in particular. He cites this Court's holding in *Pickett v. Keene*, 47 S.W.3d 67, 77

(Tex. App.—Corpus Christi 2001, pet. dism'd). There we stated that "the statute of limitations on a claim for breach of contract begins to run only when the injured party elects to treat the contract as terminated." *Id.* (citing *FD Stella Prods. Co. v. Scott,* 875 S.W.2d 462, 464–65 (Tex. App.—Austin 1994, no writ) (same, as to suits for damages on a contract)). Tucker reasons that neither he nor Bedgood treated the contract as terminated until 2014, when Bedgood eliminated any chance of performance by deeding away Lot A–11, and when Tucker filed this suit.

We find this case to be distinguishable. In *Pickett*, Ralph and Janet Keene formed a long-term oral contract with Janet's parents, the Picketts, to jointly take out a loan for the purchase of a motel in the 1960's. *Id.* at 71. Under the oral contract, the Picketts would hold full title initially, but once the down payment for the loan was paid off with profits from the motel, the Picketts would transfer one-third ownership of the motel to the Keenes, who would live in and manage the motel. *Id.* The parties further agreed that when the loan was fully paid off, the Picketts would transfer another one-sixth interest in the motel to the Keenes, giving them half ownership; finally, when the Picketts retired, they would transfer full title to the Keenes either by deed or by will. *Id.* In the 1970's, the down payment was paid off, but the Picketts and Keenes both agreed to forestall the transfer of one-third ownership in order to avoid tax liability. *Id.* In the 1980's, the loan was fully paid off, but the families again jointly agreed to delay performance. *Id.* Then, after the Keenes divorced in the early 1990's, the Picketts announced their retirement, attempted to evict Ralph Keene from the motel, and removed him from their wills. *Id.* at 72–73. On appeal, this Court upheld Ralph's action against a limitations challenge. *Id.* at 77. Though the contract was formed in the 1960's, the Picketts' performance (giving

13

the Keenes one-third title, then one-half, then full title) had been made contingent on a continuing, long-term endeavor (using the profits of the motel to gradually pay off a loan) and on a life-long goal (retirement). *Id.* at 71. The parties had placed no firm restrictions on the time frame for this performance, had jointly agreed to suspend performance for decades, and had assured one another that the transfer among loving family members would be carried out eventually. *Id.* at 71–72. Under the circumstances, the statute of limitations for a continuing contract naturally began to run "only when the injured party elect[ed] to treat the contract as terminated." *Id.* at 77.[5]

Here, unlike *Pickett*, the time frame for performance was not long-term and latent; Bedgood's obligation to arrange transfer was bound to the closing of the Bryan transaction, which happened just two months after the Bryan transaction was conceived, and Tucker testified that he assumed the transfer took place at this closing. *See id.* at 71. Unlike *Pickett*, the performance here was not a continuing transaction; rather, it was a single, distinct transaction wherein Tucker was to swap ten feet of his land for $25,000 from Bryan and five feet of land from Bedgood, each of which was already on hand. *See id.* Finally, unlike the joint family agreement to suspend performance based on mutual assurances in *Pickett*, Tucker did not agree to defer Bedgood's transfer of five feet; instead, he twice clashed with Bedgood for failing to perform, and Tucker sought immediate performance in each dispute. *See id.*

Instead of coming under the rule of *Pickett*, this case falls under the general rule

---

[5] *See also City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 725 (Tex. App.—Corpus Christi 2004, pet. withdrawn) (setting out the general rule that where "a contract . . . contemplates continuing obligations," limitations begins to run at the earlier of the following: "(1) when the work under the contract is complete; (2) when the contract is terminated in accordance with its terms; or (3) when the contract is anticipatorily repudiated by one party and this repudiation is adopted by the other party.").

14

that "a cause of action accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sw. Energy*, 491 S.W.3d at 721. As we previously discussed, the Bedgoods conclusively proved that after Bedgood breached the contract, Tucker's breach of contract claim accrued in 2008 at the latest, just as with his other claims. *See KPMG*, 988 S.W.2d at 748; *Estate of Matejek*, 928 S.W.2d at 744. Therefore, by the time he filed his suit in 2014, the two-year or four-year limitations for Tucker's respective claims had expired. Accordingly, we conclude that the trial court correctly granted summary judgment against Tucker's claims as time-barred. *See Joe*, 145 S.W.3d at 157; *KPMG*, 988 S.W.2d at 748. We overrule Tucker's third issue, which renders it unnecessary for us to consider Tucker's remaining issues. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also* TEX. R. APP. P. 47.1.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
1st day of December, 2016.

15