# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10724

———————

SHANELLE JENKINS, *as Surviving Spouse and Representative of* THE ESTATE OF ROBERT GERON MILLER,

*Plaintiff—Appellant*,

*versus*

MICHAEL TAHMAHKERA, *Officer*; JORDAN BEENE, *Officer*; JASON WHEELER, *Officer*; E. KAUTZ, *Officer*; S. JAMES, *Officer*; MICHAEL SWAN, *Officer*; BJ ODONNELL, *Nurse*; SHARON SINGLETON, *Nurse*; SHELDON KELSEY, *Sergeant*; NICHOLAS BERNAL, *Officer*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-1207

———————————————————————

Before HIGGINSON, HO, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

Shanelle Jenkins filed this wrongful death and excessive force suit on November 30, 2023, on behalf of her husband, Robert Geron Miller, who died in the custody of the Tarrant County Jail on August 1, 2019. The defendants moved to dismiss Jenkins's claims as barred by Texas's two-year statute of limitations, and the district court granted that motion. We affirm.

No. 24-10724

**I.**

On July 31, 2019, Robert Miller was arrested on eight outstanding warrants. A state-court judge ordered Miller to pay a $300 fine or spend the night in the Tarrant County Jail. Homeless, Miller opted for the latter. But on August 1, 2019, Miller died in the custody of the Tarrant County Jail. Authorities never notified Shanelle Jenkins, Miller's wife, of his death. Instead, she learned of her husband's passing a few days later by reading a local newspaper article. Even after reading that article, Jenkins alleges that she lacked any knowledge of how Miller died or who may have been involved. And "despite several direct requests" in the wake of Miller's death, Jenkins alleges that she was unable to gather any information from "Tarrant County and the [Texas] Rangers."[1]

Nevertheless, on July 30, 2021, just two days shy of two years after Miller's death, Jenkins sued the Tarrant County Sheriff's Office and the Tarrant County Sheriff (together, Tarrant County) asserting claims for, *inter alia*, wrongful death and excessive force. Specifically, Jenkins alleged that Tarrant County jailers had "committed unlawful acts against" Miller, causing his death. Aside from those generic allegations, Jenkins did not plead any specific factual allegations as to how Tarrant County employees caused Miller's death.

---

[1] Jenkins's operative complaint in this action does not allege when these requests for information were made to Tarrant County and the Texas Rangers. The complaint in her prior lawsuit, of which we take notice as a public record, is likewise devoid of any such allegation. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) ("Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice.").

2

No. 24-10724

Other than vaguely alleging that she made "several direct requests" some time before she filed suit, Jenkins did little if anything else to investigate her claims until weeks after she filed her complaint.[2] *Jenkins v. Tarrant Cnty. Sheriff's Office*, No. 22-10244, 2023 WL 5665774, at *2 (5th Cir. Sept. 1, 2023) (per curiam) (unpublished). Even then, rather than avail herself of the district court's subpoena power or propound discovery under the Federal Rules of Civil Procedure, she relied solely upon public records requests (PRRs) and informal telephone calls—the first of which occurred more than two years after Miller's death: On August 12, 2021, Jenkins filed an initial PRR with the Texas Department of Public Safety (TDPS), seeking details from TDPS's investigation into Miller's death. Receiving no substantive response, Jenkins called TDPS four times over the ensuing weeks, to no avail. She filed a second PRR with TDPS on September 7, 2021. Again, TDPS did not substantively respond. More than a month later, on October 22, 2021, Jenkins amended her complaint, requesting that the court order TDPS to respond to her PRRs. The same day, Jenkins filed a PRR with Tarrant County, but Tarrant County declined to produce the requested information.[3] From the record before us, Jenkins did not utilize any other

---

[2] Jenkins's indefinite "direct requests" are presumably the "determined efforts" to which the dissent refers. *Post*, at 18. But as discussed *infra*, these initial efforts are hardly "determined" enough to justify tolling the statute of limitations, and by her own telling, all the explicit attempts Jenkins took to investigate her husband's death did not occur until more than two years after learning of his death and weeks after she filed her first lawsuit.

[3] Neither TDPS nor Tarrant County were required to respond to Jenkins's PRRs because each PRR sought information relevant to pending litigation against a state actor. *See* TEX. GOV. CODE § 552.103 (exempting from the Open Records Act "information relating to litigation . . . to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party"). But the litigation exception to the Open Records Act did not prohibit Jenkins from seeking discovery from either entity under the Federal Rules of Civil Procedure.

mechanism to propound—or seek to compel—discovery from Tarrant County or TDPS during the pendency of her first lawsuit.[4]

With her belated PRRs adducing no substantive responses, and without propounding any other discovery, Jenkins's complaint suffered from a dearth of factual allegations to support her claims. Therefore, on the defendants' motion, the district court dismissed her federal claims with prejudice, declined to exercise supplemental jurisdiction over Jenkins's state law claims and dismissed them without prejudice, and entered a final judgment on February 11, 2022. *Jenkins*, 2023 WL 5665774, at *1.

The day after the district court dismissed her claims, Tarrant County responded to Jenkins's PRR, disclosing five pages of narrative statements by Tarrant County jailers. Two months later, in April 2022, TDPS followed, providing Jenkins 252 pages of documents responsive to her pending PRRs.[5] Collectively, those 257 pages contained details about Miller's death that Jenkins previously lacked. On May 27, 2022, Jenkins moved under Federal Rule of Civil Procedure 60(b) for relief from the judgment dismissing her

---

[4] The dissent decries our "nitpicking Jenkins's litigation strategy," and questions whether the time was ripe for discovery at any point during Jenkins's first suit. *Post*, at 27–28 & n.4. But there is no allegation or record evidence that Jenkins *even sought* civil discovery before the district court at the time. Still, the dissent apparently faults the district court for not *sua sponte* "setting a schedule for discovery." *See id.* at 19. Pointing to her complaint's suggestion that her "allegations [we]re likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," *id.* at 27, and her motion to stay pending the district court's ruling on whether Tarrant County and TDPS must answer her PRRs, the dissent posits that Jenkins in fact requested discovery. *Id.* But Jenkins herself expressly rejected that characterization in the district court; she adamantly denied that her PRRs were requests for discovery.

[5] It appears that TDPS and Tarrant County responded to Jenkins's PRRs once litigation concluded, consistent with § 552.103. *See supra* note 3.

claims with prejudice. The district court denied that motion on July 8, 2022, and Jenkins appealed.

This court affirmed the dismissal of Jenkins's complaint and the subsequent denial of her Rule 60(b) motion. *Jenkins*, 2023 WL 5665774, at *1. Our court emphasized that the district court "gave [Jenkins] ample warning and time to fill out her threadbare complaint," and only "[a]fter Jenkins failed to resolve [that] problem in a timely fashion" did the district court disallow Jenkins's second request for leave to amend. *Id.* Our court affirmed the denial of Jenkins's Rule 60(b) motion because the 257 pages received from Tarrant County and TDPS were easily discoverable, Jenkins "did not exercise due diligence" in investigating her claims, and Jenkins failed to show that "the public records agency intentionally delayed in getting her the evidence." *Id.* at *2.[6]

Jenkins filed a second lawsuit on November 30, 2023—more than two years after she filed her initial complaint—against ten individual defendants who were not parties to her original suit. In her new complaint, Jenkins again asserted excessive force and wrongful death claims but also included a more detailed factual account of Miller's death. She alleged that she first learned the general cause of Miller's death on November 30, 2021,[7] four months after

---

[6] The dissent glosses over that these issues—whether Tarrant County and TDPS intentionally concealed information from Jenkins—have been considered, and rejected, by our court before. In her appeal from the first suit's dismissal, this court held that Jenkins failed to make a showing of intentional concealment and failed to exercise due diligence to investigate her potential claims. *Jenkins*, 2023 WL 5665774, at *2. Jenkins fails to articulate why we should or may disregard that holding now.

[7] Jenkins's brief on appeal proceeds under the assumption that she read this article on November 30, 2022, but her complaint alleges that she read it on November 30, 2021—exactly two years prior to filing this action. At the Rule 12(b)(6) stage, we review a plaintiff's complaint, and accept the factual allegations set forth therein as true. *Petersen v.*

filing her original lawsuit, when she read a September 2021 article published in *The New York Times* that reported that Miller died after being thrown to the ground, pepper sprayed, and "dragged facedown to a cell."[8]  Jenkins further asserted that Tarrant County and TDPS failed to provide her with accurate information regarding her husband's death to conceal any cause of action she may have had against them and that Tarrant County and others "intentionally concealed information and relevant documentation for the benefit of the Individual Defendants."  But other than that bare-bones allegation, she alleges nothing to support that any of the named individual defendants did anything to withhold information from Jenkins or otherwise acted in concert with Tarrant County along those lines.

The defendants[9] moved to dismiss Jenkins's claims under Rule 12(b)(6) as barred by the statute of limitations and insufficiently pled to

---

*Johnson*, 57 F.4th 225, 231 (5th Cir. 2023).  Thus, we assume that Jenkins first saw the article on November 30, 2021, as pled in her complaint.

[8] The *New York Times* article was published on September 25, 2021—over two months before Jenkins alleges that she read it.  In it, the newspaper reported that

> [a]fter Robert Geron Miller, 38, died following a brief stay at the Tarrant County Jail in July 2019, Ranger C.H. McDonald learned that he had tussled violently with his jailers.  Mr. Miller sustained head injuries when one threw him to the ground, and he complained of chest pain after another guard blasted him with pepper spray.  He was dragged facedown to a cell where another jailer saw him splayed out on the floor; splashing toilet water on his face.  Twelve minutes later, the Ranger noted, Mr. Miller stopped breathing.

Michael LaForgia & Jennifer Valentino-DeVries, *They Investigate Police Killings. Their Record Is Wanting.*, N.Y. TIMES, Sept. 25, 2021, https://www.nytimes.com/2021/09/25/us/police-shootings-killings.html.

[9] Defendant Nicholas Bernal did not file or join a motion to dismiss.  Appellees aver that Jenkins's claims against Bernal "were apparently dropped from the case," as he was never served with process.  In her reply brief, Jenkins does not mention Bernal or address Appellees' assertion that her claims against Bernal have been abandoned.

circumvent their assertions of qualified immunity. In July 2024, the district court ruled that Jenkins's claims were barred by Texas's two-year statute of limitations and dismissed her claims with prejudice on that ground alone. The district court "conclude[d] that—at the latest—[Jenkins's] cause of action accrued 'several days' after Mr. Miller's death on August 1, 2019," because Jenkins had knowledge that her husband died in the custody of the Tarrant County Jail, which triggered her duty to investigate any possible claims. The district court also found that, in any event, Jenkins's claims had accrued by July 30, 2021, the day she filed her first complaint alleging excessive force and wrongful death claims.

Concluding that Jenkins's claims were barred by the statute of limitations, the district court rejected her alternative contention that equitable tolling should work to save her claims. Most relevant here, the district court determined that equitable tolling was unavailable for two reasons. First, the court found that fraudulent concealment did not toll the statute of limitations because Jenkins did not allege that any of the ten named defendants fraudulently concealed any information from her. Thus, the court ruled that none of those defendants were equitably estopped from interposing the statute of limitations as a defense. Second, the district court found that equitable tolling was inappropriate in this case because Jenkins failed to exercise diligence in investigating and pursuing her claims. Accordingly, the district court dismissed Jenkins's claims with prejudice.[10] Jenkins now appeals.

---

[10] The district court did not decide the qualified immunity question. Given our agreement that Jenkins's claims are time barred, we likewise decline to address the defendants' assertion of qualified immunity. *See C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 265 n.7 (5th Cir. 2023); *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020).

## II.

"We review a district court's dismissal under Rule 12(b)(6) de novo." *Petersen*, 57 F.4th at 231. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks and citations omitted). A complaint is "subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). "It is 'clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 n.8 (5th Cir. 2015) (quoting *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

We review de novo a district court's denial of equitable tolling as a matter of law. *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993). Where a denial of equitable tolling "stems from the district court's weighing of the equities," we review that decision "for abuse of discretion." *Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394, 398 (5th Cir. 2009) (citations omitted); *see also Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002).

## III.

Jenkins contends that (A) her claims against these defendants did not accrue until November 30, 2021, when she first read a September 2021 *New York Times* article that reported details about Miller's death, and (B) even if her claims accrued more than two years before she filed this action, Texas's

8

equitable tolling principles work to save her claims from the time bar. We disagree on both points.

## A.

"The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) (quotation marks and citation omitted). In Texas, a two-year statute of limitations governs personal injury claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b). Thus, Jenkins had to file suit within two years from the date her claims accrued. "[T]he time at which a § 1983 claim accrues 'is a question of federal law,' 'conforming in general to common-law tort principles.'" *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

"Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). "As a result, the limitations period begins 'when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury.'" *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting *Gartrell*, 981 F.2d at 257). More precisely, it begins the moment "the plaintiff is *or should be* aware of the causal connection between his injury and the acts of the defendant." *Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992). She need not have actual knowledge of every fact necessary to file suit, and she need not know that she has a legal claim. *Piotrowksi v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (*Piotrowski I*); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (*Piotrowski II*)). Instead, "she need know only the facts that would ultimately support a claim," *Piotrowski II*, 237 F.3d at 576, or be aware

of "circumstances [that] would lead a reasonable person to investigate further," *Piotrowski I*, 51 F.3d at 516.[11]

"[S]everal days" after Miller's death on August 1, 2019, Jenkins learned that her husband died in custody at the Tarrant County Jail. At that moment, she knew the injury she had suffered—her husband's death—and the circumstances—Miller died while in custody—that would have led a reasonable person to investigate the details of Miller's death. *See Smith*, 827 F.3d at 421. That is, Jenkins was aware, or should have been aware, of a possible causal connection between her injury and the acts of the defendants, employees of the Tarrant County Jail. *See Stewart*, 951 F.2d at 684. Thus, her claims accrued in August 2019, and the limitations period commenced at that time. Because Jenkins failed to assert her claims against these individual defendants within two years, her claims against them are barred by the statute of limitations.

---

[11] The dissent reads our caselaw to require a plaintiff to know the identity of each defendant before a cause of action may accrue against that defendant. *Post* at 23–24, 30; *see also Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992) ("The statute of limitations period commences once the plaintiff acquires possession of two critical facts: (1) an injury has occurred; and (2) the identity of the person who inflicted the injury."). But our cases do not require actual knowledge of the causal connection between an injury and the acts of the defendants; at base, a plaintiff's claims accrue when she "should be aware of the causal connection between [her] injury and the acts of the defendant." *Stewart*, 951 F.2d at 684; *see also Piotrowski I*, 51 F.3d at 516 (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988)). Jenkins learned in August 2019 that her husband died in Tarrant County's custody, and she alleged in July 2021 that "members of the Tarrant County Sheriff's Office as agents of [Tarrant County]" caused her husband's "wrongful death," used "excessive force" against him, and intentionally inflicted "emotional distress" upon him. Thus, at least two years before she filed this lawsuit in November 2023, she had "notice of facts which, in the exercise of due diligence, would have led to actual knowledge" of every proper defendant's identity. *Jensen*, 841 F.2d at 606.

No. 24-10724

Jenkins counters that her claims did not accrue until November 30, 2021, when she first read the September 2021 *New York Times* article that reported that Miller died from jailers' use of excessive force.[12]  But that contention is belied by the fact that Jenkins filed a complaint four months prior, on July 30, 2021, alleging claims for "excessive force" and "wrongful death" and, for support, that "law enforcement officials . . . committed unlawful acts against Mr. Miller" that caused his death.  To assert those claims and lodge those factual allegations, Jenkins must have formed some belief that her claims were meritorious and her allegations true—and that individuals employed by Tarrant County were the culpable "law enforcement officials."  *See* Fed. R. Civ. P. 11(b).  Her first complaint was also intentionally filed just before the two-year limitation period expired.

It is of no moment that Jenkins may not have known the identity of the individuals responsible at the time she filed her complaint, for she knew that Miller wrongfully died at the hands of law enforcement officials—she expressly pled that in her July 2021 complaint.  Thus, when Jenkins's claims accrued as to Tarrant County, those claims also accrued as to the individual defendants, whether she knew their identity or not.  *See Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 556–58 (5th Cir. 2017) (discussing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).[13]

---

[12] Jenkins fails to provide any support for why her claims would not have already accrued by November 30, 2021, even accepting that she belatedly discovered the *New York Times* article that day.  It was published two months before she first read it and would have been easily located via a simple internet search of her husband's name.  Her account also lacks plausibility because, despite having read the article in November 2021, Jenkins never sought to amend the complaint in her first lawsuit—which was not dismissed until July 2022—to add the facts detailed in the article.  Jenkins filed her first and only amended complaint on October 22, 2021, about one month after the article's publication.

[13] The dissent faults our citation to *Balle* because that case concerned relation back under Federal Rule of Civil Procedure 15(c).  *Post*, at 24–25.  But with great respect, the

Jenkins's claims accrued in August 2019. So the claims she asserted in her November 30, 2023 complaint are barred by the applicable two-year statute of limitations.

## B.

Jenkins maintains that Texas's equitable tolling principles work to save her claims from the statute of limitations. Specifically, she contends that Texas's fraudulent concealment doctrine tolled the statute of limitations due to Tarrant County's and TDPS's allegedly intentional withholding of information.

Jenkins is correct that Texas's equitable tolling principles control here. Indeed, "when state statutes of limitation are borrowed, state tolling principles are to be the 'primary guide' of the federal court." *Dawson*, 4 F.3d at 1309 (quoting *Johnson v. Ry. Express Agency*, 421 U.S. 454 (1975)). Specifically, "[b]ecause the Texas statute of limitations is borrowed in § 1983 cases, Texas'[s] equitable tolling principles also control." *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998) (citing *Bd. of Regents of Univ. of N.Y. v.*

---

dissent's analysis of *Balle* is misdirected. For starters, *Balle* did not "allow[] for tolling," *id.*; rather, *Balle* distinguishes another, unpublished case that did, *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam). To the contrary, in *Balle*, the plaintiff did not know at the time he filed suit—one day shy of the limitations period—the identity of two "medical professionals purportedly responsible for his care while at the jail," and instead named as defendants twenty John and Jane Does. *Balle*, 952 F.3d at 556. Through discovery, the plaintiff uncovered the medical professionals' identities and sought to join them as parties. Our court held that their joinder would not relate back under Rule 15, such that the plaintiff's claims against them were barred by the statute of limitations. *Id.* at 557–58. And because the plaintiff's "inability to determine the identities of the Jane Does before the limitations period had run was attributable to his own decision to file his suit so close to the end of the limitations period," we declined to employ equitable tolling to save the plaintiff's claims. *Id.* at 558. At the very least, *Balle* supports that statutes of limitations concern causes of action, not individual defendants whose identities the plaintiff should have known; otherwise, Balle's cause of action against the medical professionals would have been viable.

*Tomanio*, 446 U.S. 478, 485 (1980)).[14]    More specifically, the species of tolling at issue here is Texas's fraudulent concealment doctrine, which "is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).    Jenkins contends that the district court erred in its application of this doctrine in her case.  We disagree.

In    Texas,    "fraudulent    concealment . . . resembles    equitable estoppel."    *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 736 (Tex. 2001).  In that sense, "[f]raudulent concealment tolls limitations 'because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.'"    *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)).  Thus, "[a] party asserting fraudulent concealment must establish an underlying wrong, and that '*the defendant* actually knew the plaintiff was in fact wronged, and *concealed that fact* to deceive the plaintiff.'"    *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (emphasis added) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)).  Still, "[t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person

---

[14] The dissent invites us to sweep Texas's equitable tolling principles up into federal accrual rules, blurring the distinction between claim accrual and equitable tolling rules and suggesting that the resolution of this appeal rests simply upon how the inquiry is framed. *Post*, at 30.  We respectfully decline the dissent's invitation and disagree that the question is merely one of "fram[ing]."  Our precedent recognizes a distinction between accrual rules and equitable tolling principles, counseling that we employ federal law to determine the former and state law for the latter.  Indeed, whereas accrual is an objective rule that inquires whether a reasonable plaintiff would or should have known that she suffered a legally actionable injury, *see Piotrowski I*, 51 F.3d at 516, a defendant may separately be equitably estopped from interposing the statute of limitations to defeat an accrued claim due to the defendant's conduct, *i.e.*, fraudulent concealment. *See, e.g.*, *Wagner & Brown, Ltd.*, 58 S.W.3d at 736.

to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)).

The district court correctly applied Texas law in rejecting Jenkins's fraudulent concealment argument. Jenkins alleges only that Tarrant County and TDPS, neither of which are named defendants in this action, intentionally concealed information from her. She does not allege that any of the named defendants fraudulently concealed any information from her. Therefore, the district court did not err in concluding that these defendants could not be equitably estopped from asserting the statute of limitations as a defense. *Mowbray v. Avery*, 76 S.W.3d 663, 690–91 (Tex. Ct. App.—Corpus Christi–Edinburg 2002, pet. denied); *see also Marshall*, 342 S.W.3d at 67. To the extent Jenkins's knowledge of these individual defendants' identities impacts the statute of limitations analysis—it does not, *see Balle*, 952 F.3d at 556–58—Jenkins failed to exercise due diligence to discover the identities of these defendants prior to the expiration of the limitations period. And because she learned, at least before July 30, 2021, "of facts, conditions, or circumstances which would [have] cause[d] a reasonably prudent person to make inquiry, which, if pursued, would [have led] to discovery of the concealed cause of action," any tolling would have ended by that date. *See Lehmann*, 359 S.W.3d at 623. For all these reasons, Texas's fraudulent concealment doctrine does not defeat application of the statute of limitations here.

The district court also found more generally that equitable tolling was inappropriate given Jenkins's failure to exercise diligence in investigating and bringing her claims. After balancing the equities, the district court dismissed Jenkins's claims for that independent reason. We review such a decision for abuse of discretion. *Rx.com*, 322 F. App'x at 398.

"Traditional equitable principles preclude a court from invoking equitable tolling, . . . when the party seeking relief has an adequate legal remedy or statutory remedy to avoid the consequences of the statute of limitations." *Balle*, 952 F.3d at 558 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). Here, Jenkins had adequate legal remedies to avoid the running of the statute of limitations. Among other possible avenues, she could have filed suit against Tarrant County, and these individual defendants, well earlier than she did—she knew that her husband had died in custody and should have begun asking questions about his death long before she filed her initial complaint against Tarrant County in July 2021. She could have propounded and sought to compel discovery from Tarrant County in her initial suit. She could have deposed a Rule 30(b)(6) representative of Tarrant County soon after filing that lawsuit, asking for, *inter alia*, the names of all individuals involved, and then joined those individuals as parties. But she failed to take advantage of those avenues. As a result, she fails to show the district court abused its discretion in affording her claims the benefit of equitable tolling.

## IV.

Jenkins's claims accrued in August 2019. Therefore, her November 20, 2023 complaint falls beyond Texas's two-year limitations period. Her claims are thus time barred. Jenkins is not entitled to equitable tolling as to the defendants named in this case because she does not allege that any of them fraudulently concealed information from her. And she failed to exercise diligence in investigating her claims or taking advantage of legal remedies available to her to avoid the statute of limitations. For those reasons, the district court did not err by dismissing Jenkins's complaint with prejudice.

AFFIRMED.

No. 24-10724

JAMES C. HO, *Circuit Judge*, concurring:

I agree with the majority, but write separately to address the dissent's concerns. Enforcing rules like statutes of limitations can seem deeply unjust at times. But even the most minor violations of limitations have resulted in forfeited claims—regardless of merits. The Supreme Court once "refused to accept a petition for certiorari submitted by Ryan Heath Dickson because it had been filed one day late," so he was "executed on April 26, 2007, without any Member of [the] Court having even seen his petition for certiorari." *United States v. Davis*, 137 F.4th 349, 351 (5th Cir. 2025) (quoting *Bowles v. Russell*, 551 U.S. 205, 212 n.4 (2007)). Similarly, the Supreme Court refused to accept a petition for certiorari submitted by attorneys in a multi-million dollar anti-trust dispute because it was filed just "a few days" late. *Id.* (citing *Northwest Airlines, Inc. v. Spirit Airlines, Inc.*, 549 U.S. 805 (2006)).

This case features a more substantial breach of limitations. Shanelle Jenkins had two years to investigate these claims and file suit. Yet our court has already once concluded—unanimously—that Jenkins failed to exercise due diligence. *See Jenkins v. Tarrant Cnty. Sheriff's Office*, 2023 WL 5665774, at *2 (5th Cir. Sept. 1, 2023) (per curiam) (unpublished). And if anything, the record here shows that she was even less diligent in this case.

Whether a violation of the limitations period be minor or significant, the rule of law requires us to enforce the rules all the same. If we don't require attorneys to be diligent, the entire system slows down. And there are legitimate interests in repose that legislators are entitled to take into account. *See, e.g.*, *Toussie v. United States*, 397 U.S. 112, 114–15 (1970); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

We honor those interests—and the rule of law—by enforcing the rules consistently, even when the result seems unjust. I concur.

16

No. 24-10724

STEPHEN A. HIGGINSON, *Circuit Judge*, dissenting:

When we review dismissals under Rule 12, we take the plaintiff's well-pleaded allegations at face value. I therefore start by recounting what the plaintiff in this case, Robert Miller's widow Shanelle Jenkins, has alleged about her repeatedly obstructed attempts to learn what happened to her husband.

Jenkins tells us that her husband was in the custody of the Tarrant County Jail when he died in August 2019. It is now apparent that he suffocated to death because he was repeatedly pepper-sprayed while he was in restraints, then abandoned on a jail cell floor as he struggled to breathe. But that is not what was conveyed to Jenkins. Instead, the government misstated the cause of death and disseminated a false autopsy report. Jenkins diligently sought but could not obtain any additional information, so she filed suit against the County. But the government continued to withhold the records Jenkins needed, and in February 2022 her suit was dismissed.

Only once the suit was dismissed did the government start to turn over its records. Disclosure began the very next day after the dismissal and finished in April 2022. Those records finally allowed Jenkins to determine the individuals involved in the events of her husband's death. Jenkins has now sought in this second suit, filed November 2023, to bring those individuals to account.

The majority denies her claims by determining that Jenkins should have identified and sued the individual defendants by August 2021—which is to say, before the government released any records at all. To reach that counterintuitive conclusion, the majority sets aside the complaint's well-supported allegations of a coordinated effort to keep Jenkins (and the broader public) in the dark. Instead, the majority draws a series of inferences against Jenkins to determine, on its own, that she was duty-bound to suspect an

official killing and cover-up at the instant she learned of her jailed husband's death, discounting her determined efforts in the face of government stonewalling to learn what had happened to him. Anticipating the objection that frustration of a suit ordinarily tolls limitations, the majority then interprets Texas's tolling rules to reward rather than redress the alleged cover-up.

The limitations issue in this case presents questions of fact—when a reasonable person would have investigated a death in jail, how such an investigation would have proceeded, whether there was joint action to conceal the claims that would invite equitable tolling. To address those questions, Jenkins should have an adequate opportunity to develop the record. Because the majority denies her that chance, I respectfully dissent.

## I.

Robert Miller died in the custody of Tarrant County Jail officials on August 1, 2019. Compl. ¶ 143. The operative complaint alleges that he was pepper-sprayed indoors—multiple times, while he was in full-body metal restraints—then left without medical treatment for his asthma while he suffocated to death. *Id.* ¶¶ 37–53, 66, 68–92, 105–43.

But that is not what Tarrant County told Miller's grieving widow Shanelle Jenkins, the plaintiff in this case. In the aftermath of her husband's death, the County made no effort to inform Jenkins what had happened. Instead, she learned about the death several days later from a newspaper article that "did not indicate any wrongdoing." *Id.* ¶ 145. The Tarrant County medical examiner reported Miller's cause of death as "natural." *Id.* ¶ 165. The initial autopsy report was not submitted until June 2020, nearly a year after Miller's death, and was not provided to Jenkins "despite several direct requests" for information. *Id.* ¶¶ 165, 171, 174. The autopsy report attributed Miller's death to "sickle cell crisis," which later independent

analysis showed to be medically impossible. *Id.* ¶¶ 165–71, 198–99, 209–20. When Jenkins "diligently tried to gather information" so she could learn more, Tarrant County and the agency responsible for investigating Miller's death, the Texas Department of Public Safety (DPS), blocked her efforts and refused to disclose the records she needed. *Id.* ¶¶ 174, 195–96, 225–26.

Stonewalled in her repeated attempts to obtain information about the persons responsible for her husband's death, Jenkins brought suit against several government entities within the timeframe the majority identifies as the limitations period, *id.* ¶ 175, and sought in that first suit to obtain records from Tarrant County and from DPS, *id.* ¶¶ 176–84. But precisely because those records were missing, the district court determined that the complaint failed for lack of factual support; instead of setting a schedule for discovery, however, the court dismissed the case. *Jenkins v. Tarrant Cnty. Sheriff's Off.*, No. 21-CV-910, 2022 WL 426593, at *9–11, *14 (N.D. Tex. Feb. 11, 2022).

*The day after the case was dismissed*, the government began turning over records. Compl. ¶¶ 187–88. Disclosure was not completed until April 13, 2022. *Id.* ¶ 191. Those records contradicted the government's story that Miller had died of natural causes. *See id.* ¶ 192. They led some observers, in the words of a Tarrant County Commissioner, to conclude that there "appear[ed] to be a coverup in the death of Robert Miller." *Id.* ¶ 202 (emphasis omitted). Jenkins accordingly moved the district court to reconsider the dismissal. But the district court, exercising its discretion under Rule 60(b), denied the motion. This court first issued an opinion affirming the dismissal that did not address the Rule 60(b) motion, and then affirmed the denial of the motion in a revised opinion. *See Jenkins v. Tarrant*

*Cnty. Sheriff's Off.*, No. 22-10244, 2023 WL 5665774, at *1–2 (5th Cir. Sept. 1, 2023) (per curiam).[1]

Because Jenkins did not know the identities of the individual officers who were involved in the events, her first suit had not made them defendants. Compl. ¶¶ 185, 188–89. With the newly disclosed information, however, she was able to file this second suit against the individual officers in November 2023. *Id.* This time, the district court applied Texas's two-year statute of limitations and dismissed because, apparently, Jenkins's diligent efforts to acquire support for her claims had rendered those claims untimely.

## II.

The majority opinion now sustains that patently unfair result. The majority charges that the limitations period started to run in August 2019 at the moment Jenkins learned that her husband had died, before she knew any of the individual defendants' identities. The majority then determines as a matter of law that Jenkins, who repeatedly attempted to contact DPS and then sought records using judicial process, did not exert reasonable efforts to investigate her claims within that period.

That is legal error that is particularly unjustified on these facts. Our case law makes clear that the claims accrued only once Jenkins had reason to know the identities of those involved in the events of her husband's death, which, given the government's stonewalling, could not have occurred until

---

[1] Because the suit involved government defendants, the decision did not address the question of when Jenkins could have sued the individual officers party to this case. It is worth noting that one basis for the decision was "the ease of accessing" the records because they were "available under the Texas Public Information Act." *Jenkins*, 2023 WL 5665774, at *2. But the majority opinion now points out that under Texas Government Code § 552.103, neither Tarrant County nor DPS was "required to respond" to Jenkins's requests after all. *Ante*, at 3 n.3.

at least 2022, when Jenkins finally received access to the records she had been seeking. And it was the government's doing, not her own, that deprived Jenkins of access to the records up to that point.

## A.

To determine that Jenkins's claims are untimely, the majority starts from the premise that the claims accrued the moment Jenkins learned that her husband had died. "At that moment, she knew the injury she had suffered—her husband's death—and the circumstances—Miller died while in custody—that would have led a reasonable person to investigate." *Ante*, at 10. Accordingly, the majority reasons, the limitations period started to run at that point.

I am skeptical of that conclusion, and, regardless, I disagree that we can reach it categorically without factual inquiry. The statute of limitations is an "affirmative defense" that puts the burden on the defendant "to establish it by proof." *Harrison v. Thompson*, 447 F.2d 459, 460 (5th Cir. 1971) (per curiam). When a plaintiff "raise[s] questions of fact," it is "inappropriate to dispose of the case by dismissal." *Id.*

The majority's accrual analysis amounts to faulting Jenkins for not jumping, at the moment she was informed of her husband's death in government custody, to what would have been a conclusion unsupported by any evidence at all that he was killed by the state. But whether her reaction was reasonable depends on its factual context. *See Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 10 (5th Cir. 1967) ("Inevitably the factual issue of due diligence involves, to some extent at least, the state of mind of the person whose conduct is to be measured against this test and it is simply not feasible to resolve such an issue on motion for summary judgment."). A duty to investigate suspicious circumstances is not a duty to assume that all circumstances are suspicious. *See Stewart v. Par. of Jefferson*, 951 F.2d 681,

684 (5th Cir. 1992) ("The prescriptive period will not commence prior to the time the plaintiff is *or should be* aware of the causal connection between his injury and the acts of the defendant."). That is particularly true in this setting because we typically presume that government officials discharge their duties with regularity, not malice. *See, e.g.*, *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 173–74 (2004).

The majority's counterfactual approach is even more surprising because the information available to Jenkins naturally led to the opposite conclusion. As far as Jenkins knew or had reason to know, her husband died from natural causes. Tarrant County *still* apparently maintains that Miller died from sickle cell crisis. *See* Compl. ¶ 223. I do not see how we can fault a citizen plaintiff for accepting a medical examiner's official representations (which, again, we ourselves would generally presume to be reliable[2]) rather than trying to gather information for a lawsuit that, based on the information she had, would have been speculative and premature.

The majority's way of viewing this issue abounds with hindsight. It is now clear that there was more to learn about Miller's death, so the majority faults Jenkins for insufficient effort. But I see no specific information Jenkins had in 2019, other than the majority opinion's ipse dixit, that would have

---

[2] To this effect, however, it is worth noting that one in about 13 African-Americans has sickle cell trait, most of them heterozygous for the trait and therefore unlikely to develop sickle cell disease. A *New York Times* investigation found dozens of instances where deaths in police custody were attributed to sickle cell trait. Michael LaForgia & Jennifer Valentino-DeVries, *How a Genetic Trait in Black People Can Give the Police Cover*, New York Times (May 15, 2021), https://www.nytimes.com/2021/05/15/us/african-americans-sickle-cell-police.html. "Several doctors and researchers who spoke with The Times said they would be skeptical of in-custody deaths attributed to sickle cell trait, unless the situation also involved other risk factors." *Id.*; *see also* Lachelle D. Weeks et al., *Sickle Cell Trait Does Not Cause "Sickle Cell Crisis" Leading to Exertion-Related Death: A Systematic Review*, 145 Blood 1345, 1350 (2025).

called for a probing investigation into her husband's death while in government custody and care. In any case, the reasonableness of her reaction is an issue improper for the district court, or us, to resolve at this threshold posture.

## B.

Another factual question is particularly inconvenient for the majority: when Jenkins could have learned the identity of the individual defendants. The majority sidesteps the issue by positing that "when Jenkins's claims accrued as to Tarrant County, those claims also accrued as to the individual defendants." *Ante*, at 11.

That is wrong as a matter of law. The majority correctly states that "the limitations period begins 'when the plaintiff is in possession of the "critical facts that he has been hurt and who has inflicted the injury."'" *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (quoting *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993)). But obviously, when Jenkins did not know the identities of the individual defendants, she did not know "who ha[d] inflicted the injury" of her husband's death. Thus, she lacked "possession" of one of the "critical facts" necessary to support her claims. *Stewart*, 951 F.2d at 684 ("The statute of limitations period commences once the plaintiff acquires possession of two critical facts: (1) an injury has occurred; and (2) *the identity of the person who inflicted the injury*." (emphasis added)); *see also Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980).

*Piotrowski v. City of Houston* (*Piotrowski II*), 237 F.3d 567 (5th Cir. 2001), is instructive. After Barbra Piotrowski left a troubled relationship, her ex-boyfriend enlisted the Houston Police Department to harass her, culminating in an attempt on her life. *Id.* at 572–74. Over a decade later, Piotrowski learned from an officer's deposition testimony in a libel suit that

a police "code of silence," among other things, meant that "the City itself, as opposed to individual officers, had a policy of . . . keeping information from Piotrowski," making it potentially liable for her injuries. *Id.* at 577 & n.12.

We rejected the argument that Piotrowski "knew of the facts underlying her claims" at the moment she was attacked "or should have inquired into the actions of the police officers at that time." *Id.* at 576. Instead, we sustained the jury's conclusion that the claims accrued at the deposition because only then could Piotrowski have "suspect[ed] that the City, as opposed to individual officers, had actively protected and/or assisted" the person who arranged the murder contract. *Id.* at 577.

*Piotrowski II* shows not only that the mere fact of injury need not trigger a duty to investigate, but also that accrual of claims against a government entity cannot be equated with accrual of claims against individual defendants. That forecloses the majority's contention that claims that "accrued as to Tarrant County" thereby "accrued as to the individual defendants." *See ante*, at 11.

The majority opinion cites *Balle v. Nueces Cnty.*, 952 F.3d 552 (5th Cir. 2017), to support its assertion that "knowledge of . . . defendants' identities" does not "impact[] the statute of limitations analysis," *ante*, at 14, but *Balle* does not stand for that proposition. *Balle* instead explained that relation back was unavailable under Rule 15(c)(1)(C) when John Doe defendants are substituted by named parties because the rule targets "error, such as a misnomer or misidentification." 952 F.3d at 557 (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)). We then allowed for tolling where "'the delay in determining the identity of "John Doe" [was] not attributable to' the plaintiff's actions," *id.* at 558 (quoting *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam))—and did not evaluate accrual at all.

24

To the extent it is relevant, *Balle* shows why the majority's approach cannot be correct. *Balle* teaches that, had Jenkins sued unnamed officers in her first suit, she would not benefit from relation back were she to amend those claims to run against named defendants. So it cannot be the case that, even if her first complaint shows that Jenkins knew she had a cause of action against somebody without knowing whom, she thereby had all the information she needed to support claims against individual officers.[3]

By taking a contrary approach, the majority opinion provides government defendants with a recipe for evading § 1983 liability. If plaintiffs can be required to file their claims before they know the identities of any defendants, and limitations will run even as the plaintiff remains unable to determine whom they must sue, then all the government needs to do to keep officers from being held accountable is to cloister them from identification while the limitations period runs. That is plainly inconsistent with § 1983's command that "[e]very person" who deprives another of civil rights under color of state law "shall be liable to the party injured."

## C.

With the limitations period set as early as possible, the majority says that Jenkins should have done more during that period to persuade the government to hand over the records it refused to disclose. According to the

---

[3] Although the majority glosses over the point, I do not understand the majority to treat the filing of a previous complaint, in and of itself, as establishing that any claims in the complaint have accrued. That is demonstrated by the majority's position that Jenkins should have used the discovery process to "investigate her claims." *See ante*, at 3. Indeed, other courts have concluded that complaints supported by reasonable *belief* do not necessarily speak to the question of when a plaintiff *knew* or should have known of the facts supporting later claims. *See Childs v. Haussecker*, 974 S.W.2d 31, 43 (Tex. 1998) (describing an earlier suit based on "a diligent plaintiff's mere suspicion or subjective belief" as, "standing alone, insufficient to establish accrual").

majority, "Jenkins did little . . . to investigate her claims until weeks after she filed her complaint. Even then, rather than avail herself of the district court's subpoena power or propound discovery under the Federal Rules of Civil Procedure, she relied solely upon public records requests . . . and informal telephone calls." *Ante*, at 3 (citation omitted).

Again, that analysis discounts the complaint's allegations. Even though "[a]ll that [Jenkins] was aware [of] was that her husband had died while in the custody of Tarrant County," she, pro se, as a grieving widow, "sought to learn more information behind the cause of Mr. Miller's death," "diligently tr[ying] to gather information from Tarrant County and [DPS]." Compl. ¶¶ 173–74. Only after "several direct requests" for information were stonewalled did Jenkins "acquire[] legal representation and sue[] Tarrant County." *Id.* ¶ 175. If it were Jenkins's burden to rebut a limitations defense in her complaint (which it is not), these statements would "set forth sufficient information to outline the elements" of reasonable diligence, or at least "permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999).

Moreover, the existing record (even without discovery) confirms that Jenkins conducted an investigation that was reasonable under the circumstances. At a hearing in the first case on August 13, 2021, counsel for Jenkins explained that he was retained after "[s]he had been frustrated in her attempts to receive information from Tarrant County" and "frustrated by [DPS], because they had not provided her any information about the status of her husband's case." That account of stonewalling is corroborated both by the government's continuing refusal to turn over records once Jenkins brought suit, and by the statement of a Tarrant County Commissioner surmising a "coverup in the death of Robert Miller."

26

The majority's insistence that Jenkins, faced with these obstacles, should have deployed "the district court's subpoena power" or sought discovery is unpersuasive.[4] *See ante*, at 3. In her first suit, Jenkins *did* ask the district court to "compel[] Defendants to make information available for public inspection" under Texas Government Code § 552.321, a state-law cause of action. The complaint repeatedly explained that "a reasonable opportunity for further investigation or discovery" was necessary to substantiate the allegations in light of DPS's "refus[al] to provide any documentation or records." When Jenkins sought to stay the case to gather additional information, the defendants described the motion as "nothing more than a request to conduct discovery." And the district court ultimately "reject[ed] Plaintiff's suggestion that she be permitted more discovery in order to plead her best case." It is hair-splitting to say that a diligent attempt to investigate was not made because Jenkins focused her efforts on one procedural vehicle, and not an equivalent one identified by the majority opinion after the fact, to try to accomplish the same thing.

If anything, Jenkins took *more* assertive steps than seeking discovery under the Federal Rules, as it is far from clear that the time was ripe to seek discovery at all. In their response to the stay motion, with motions to dismiss pending, the defendants argued that they should not have to "unlock the

---

[4] Requiring a plaintiff to file suit against a different adversary and then engage in specific procedural maneuvers to try to draw out information is a formidable burden to impose in the name of "reasonable diligence." Yet such burdens can be found throughout the majority opinion. To take another example, the majority contends that the *New York Times* article about Miller's death ran "two months before [Jenkins] first read it and would have been easily located via a simple internet search of her husband's name." *Ante*, at 11 n.12. I see no reason to require the bereaved to scour the papers every day for news reports about a loved one's death while in the government's custody and care. At the very least, my disagreement with the majority on issues like these counsels in favor of further development and fact-finding.

doors of discovery" for Jenkins because the early phase of the case made discovery "inappropriate." The majority opinion offers no explanation of how, facing this strenuous opposition and a pending motion to dismiss, Jenkins is supposed to have unlocked those doors on her own. *See Riley v. Walgreen Co.*, 233 F.R.D. 496, 499 (S.D. Tex. 2005) ("Rule 26(d)'s proscription sweeps broadly: not only may a party not 'serve' discovery, it may not even 'seek' discovery from any source until after the Rule 26(f) conference.").[5] At any rate, nitpicking Jenkins's litigation strategy this way involves so much speculation that decision on these grounds is inappropriate in this posture.

## III.

Forced to explain how Jenkins could have brought her claims during a period when the government refused to tell her what had happened to her husband, the majority opinion says that "Texas's equitable tolling principles control," and that equitable tolling is not available under Texas law. *See ante*, at 12.

I disagree on both points. As I have explained, the government's stonewalling prevented Jenkins from learning critical facts she needed to bring her claims. That kept her claims from accruing under federal principles, regardless of state tolling rules. And in any event, the majority opinion fails to address allegations of joint action that could make equitable tolling proper under Texas law.[6]

_____

[5] I do not understand the majority to speculate that Jenkins should have unilaterally moved for expedited discovery, but in any case it is unlikely that the district court, which dismissed the suit, would have granted such a motion. *See Warren v. Bank of Am., NA*, No. 13-CV-1135, 2013 WL 12221859, at *1 & n.2 (N.D. Tex. Dec. 16, 2013) (Ramirez, J.).

[6] The majority opinion also raises the issue of diligence in this context. *Ante*, at 14–15. I find that analysis unpersuasive for the reasons explained in Section II.C.

The majority's approach also portends clouds on the horizon. If, as the majority concludes, a state's law can allow the state to run out limitations in a § 1983 suit by concealing the identity of individual defendants, then applying federal common law may be necessary to give effect to Congress's mandate in § 1983.

## A.

As a starting point, I disagree that equitable tolling is the sole lens through which we should view Jenkins's allegations of concealment. A claim generally does not accrue until "the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 811 (2024) ("[W]e have 'reject[ed]' the possibility that a 'limitations period commences at a time when the [plaintiff] could not yet file suit' as 'inconsistent with basic limitations principles.'" (quoting *Bay Area Laundry*, 522 U.S. at 200)). That requires the plaintiff to have "possession of" the "critical facts" to support a complaint. *Stewart*, 951 F.2d at 684. When the facts are hidden from the plaintiff, the claim does not accrue. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763–64 (5th Cir. 2015) ("[T]o the extent Plaintiffs are arguing that the limitations clock should not have run until they discovered or should have discovered their injuries, they are arguing for application of the federal accrual rule that we already apply.").[7]

_____

[7] We have stated that "[w]hen a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled." *Piotrowski v. City of Houston* (*Piotrowski I*), 51 F.3d 512, 517 (5th Cir. 1995). However, the analysis *Piotrowski I* cited for this proposition in *United States v. Kubrick*, 444 U.S. 111, 122 (1979), concerned accrual; *Piotrowski I* may have meant that the statute of limitations is "tolled" by the discovery rule. *See Piotrowski I*, 51 F.3d at 517 ("[W]e cannot say as a matter of law

It may be, the majority says, that under Texas law concealment of a cause of action can independently support equitable tolling, but that does not keep it from being a federal accrual issue too. *See Wallace*, 549 U.S. at 388 ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.").

One of the facts necessary to bring a suit is the defendant's identity. In a survival action under § 1983, the plaintiff may well require government records to establish which officer bears responsibility for the events at issue. Until the plaintiff obtains those records, she is not in "possession of" the "critical fact[]" of "the identity of the person who inflicted the injury." *Stewart*, 951 F.2d at 684. Accordingly, when the reason that a plaintiff cannot track down an individual defendant is that a government entity is concealing the defendant's identity, the claim has not yet accrued. That is a vital conclusion of federal law that is not subject to displacement by the states.

## B.

Nonetheless, the majority restricts its analysis of the concealment issue to tolling, explaining that under Texas law equitable tolling is not available to remedy concealment of information by a third party. Again, this illustrates why the issue is better framed in terms of accrual, since the nonsensical result is that a plaintiff is forced to bring a claim she lacks information to support.

But in any event, the majority opinion is likely incorrect on the merits. The majority cites *Mowbray v. Avery*, 76 S.W.3d 663 (Tex. Ct. App.—Corpus

---

that the limitations period started in 1980."). In any event, if *Piotrowski I* applies, "the statute of limitations is tolled" anyway; alternatively, if, as the majority says, tolling is unavailable because this case does not involve a "defendant" controlling the relevant facts such that *Piotrowski I* does not apply, we may follow *Kubrick* and our other accrual cases.

Christi-Edinburg 2002, pet. denied). *Ante*, at 14. There, the plaintiffs in a first case sought to recover life insurance proceeds because the defendant had been convicted of causing the death of the insured. 76 S.W.3d at 670. In a second case, the former defendant filed a petition for bill of review and alleged that her "conviction was procured by 'the wrongful conduct of officers of the court and their conspirators.'" *Id.* at 672, 684 n.30. The court declined to impose equitable tolling based on these assertions of prosecutorial misconduct. *See id.* at 690.

This case has a far more immediate connection between the concealed information and the defendants' liability, both as a matter of pleading and as a matter of logic. The complaint expressly alleges that the relevant information was concealed for the benefit of the individual defendants. Compl. ¶¶ 9–16, 159, 171, 174, 202, 210, 215, 224, 226.[8] Indeed, as the majority opinion points out, DPS likely refused to disclose the relevant records to Jenkins *because* her first suit was pending. *See ante*, at 3 n.3.

Under Texas's rules, that distinction makes a difference. Tolling can be proper on the basis of a third party's actions when those actions can be imputed to the defendant. *See Bonner v. McCreary*, 35 S.W. 197, 199 (Tex. Civ. App. 1895, writ ref'd). Doing so is especially sensible in contexts involving partners, co-conspirators, or joint venturers who are presumed to

---

[8] The majority opinion describes these allegations as "bare-bones." *Ante*, at 6. But they are supported by the government's disclosure of the relevant records starting the day after dismissal of the first suit, the falsified autopsy report, news reporting that Tarrant County "tried to withhold nearly every detail about what happened to Miller inside the jail," Tarrant County's allegedly routine involvement of DPS to investigate deaths at the Tarrant County Jail rather than having the independent investigation required by Texas law, Tarrant County's alleged pattern of obstructing similar open records requests, and a statement by a Tarrant County Commissioner that he was "troubled by what appears to be a coverup in the death of Robert Miller." That is more than enough "context" to "raise[] a suggestion of" coordination. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

act on each other's behalf. *See Glenn H. McCarthy, Inc. v. Knox*, 186 S.W.2d 832, 838 (Tex. Civ. App.—Galveston 1945, writ ref'd). Jenkins has alleged a joint effort among the relevant actors to cover up the events surrounding Miller's death. Those allegations are supported by statements from Tarrant County officials. That could provide a reason to impute the actions of third parties to the individual defendants in the tolling analysis. At the very least, it calls for factual development as to the nature and extent of common action.

## C.

Finally, if it can be assumed both that Texas law on equitable tolling displaces federal accrual law and that it forecloses recourse for plaintiffs in these circumstances, it may be necessary to consider the availability of tolling under principles of federal common law.

"In enacting 42 U.S.C. § 1988 Congress determined that gaps in federal civil rights acts should be filled by state law"—but only "as long as that law is not inconsistent with federal law" and does not "defeat the goals of the federal statute at issue." *Hardin v. Straub*, 490 U.S. 536, 538–40 (1989) (footnote omitted) (citing *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 488–92 (1980)). Accordingly, "a state's tolling provisions cannot be inconsistent with the policies underlying § 1983." *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998); *accord Heck v. Humphrey*, 997 F.2d 355, 358 (7th Cir. 1993) (Posner, J.) ("[A] body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy under section 1983 and therefore is overridden by the federal doctrine."), *aff'd on other grounds*, 512 U.S. 477 (1994).

It obviously "defeat[s] . . . § 1983's chief goals of compensation and deterrence," *Hardin*, 490 U.S. at 539, when state entities can block suits against individual officers by concealing their identities. The problem is not

localized to this case.  As long as information can be withheld or covered up for the limitations period, Congress's aims of compensation and deterrence can be thwarted—not only for the term of the concealment, but permanently.

That is not what Congress intended.  The Ku Klux Klan Act of 1871 responded to "crimes perpetrated by concert and agreement, by men in large numbers acting with a common purpose." Cong. Globe, 42d Cong., 1st Sess. 457 (1871) (statement of Rep. John Colburn).  "[H]undreds of cases were chronicled; and a singular feature connected with them was that the civil authorities seemed utterly powerless to obtain convictions for any crimes, however atrocious." *Id.* at 459. Representative Colburn of Indiana stated:

> Such occurrences show that there is a pre-concerted and effective plan by which thousands of men are deprived of the equal protection of the laws.  The arresting power is fettered, the witnesses are silenced, the courts are impotent, the laws are annulled, the criminal goes free, the persecuted citizen looks in vain for redress.  This condition of affairs extends to counties and States; it is, in many places, the rule, and not the exception.
>
> What, then, can be done?  The States cannot or do not act. Some other power must be invoked.  Where does it reside? . . .
>
> That power resides in the General Government. . . . Without such a superintending and overruling authority our Government is chaos, is anarchy, is an unfinished ruin, fails where it is most needed. . . .
>
> Whenever, then, there is a denial of equal protection by the State, the courts of justice of the nation stand with open doors, ready to receive and hear with impartial attention the complaints of those who are denied redress elsewhere.  Here may come the weak and poor and downtrodden, with assurance that they shall be heard.  Here may come the man smitten with many stripes and ask for redress.  Here may come the nation,

> in her majesty, and demand the trial and punishment of offenders, when all, all other tribunals are closed.

*Id.*  In that context, it is hard to believe that Congress would have contemplated that a defendant might escape § 1983 liability by leveraging collusion or acquiescence among officials to open up strategic opportunities under a state's common law of procedure.

This case can be resolved on the other grounds I have identified.  But when state tolling rules begin to swallow up claims that have properly accrued under federal law, we must confront this problem.

## IV.

The majority opinion affirms dismissal of dire and unresolved allegations of a government killing and cover-up.  In doing so, the majority opinion disregards governing law and the guiding principles of § 1983.  Worse, it encourages government officials to run out statutes of limitations by concealing information about lethal misconduct.

These missteps raise concerns in and of themselves, but they are especially concerning in their broader context.  Official defendants in suits like these already are generally protected by qualified immunity.  To that daunting substantive gauntlet, the majority now adds Kafkaesque procedural obstacles for ordinary Americans seeking to hold government officials accountable for violations of constitutional rights.

I would reverse and remand to allow the issue of limitations to be determined on a full, factual record.  I respectfully dissent.